**In re I.C. COCHRAN, Jr., Debtor.**

**Civ. No. 92–31–ALB/AMER(DF).**

United States District Court,
M.D. Georgia,
Albany/Americus Division.

June 4, 1992.

---

Harry Wingate, Albany, Ga., for I.C. Cochran, Jr., Debtor.

Janice Rovner, Dept. of Justice, Washington, D.C., for U.S.

## ORDER

FITZPATRICK, District Judge.

In this case the United States has appealed from the denial of its motion for relief from an *ex parte* order from the bankruptcy court, Honorable John T. Laney, III, presiding, directing that any tax refunds due to the debtor be paid directly to the U.S. Trustee as provided in the debtor's Chapter 13 plan. After the original income deduction order was issued pursuant to 11 U.S.C. § 1325(c), the United States moved the bankruptcy court to alter or amend that order. A hearing was held two months later. Several months after the hearing, the government's motion was denied, after which this appeal was filed. The United States raises four questions in its brief, which will be considered in order given in that document.

1. Does the debtor's tax refund constitute "income" under § 1325(c) of the Bankruptcy Code?

Section 1325(c) provides that after a plan has been confirmed, the court may

order an entity from which the debtor receives income to pay all or part of that income to the Trustee. The parties agree that the United States qualifies as an entity under this section. The debtor's plan, as confirmed, provided that any tax refund he might receive would be paid to the Trustee. The United States argues that a tax refund is not income and therefore it should not be required to make such a payment.

The court believes that a tax refund does qualify as income, even though the Bankruptcy Code does not define that term. A tax refund is, by definition, a repayment of overpaid taxes on income, i.e. money that should have been classified originally as net income rather than paid as taxes. Additionally, other courts have treated tax refunds as constituting "disposable income" under § 1325(b), meaning that these funds must be applied to payments under a Chapter 13 plan before it can be confirmed. *In re Rhein,* 73 B.R. 285 (Bkrtcy.E.D.Mich. 1987); *In re Red,* 60 B.R. 113 (Bkrtcy. E.D.Tenn.1986). Surely, if a tax refund is included in the narrow category of disposable income under § 1325(b), then it is to be counted in the broader category of income in general under § 1325(c). Finally, the court agrees with the Trustee that the definition of income used by the Internal Revenue Service for tax purposes does not necessarily apply in the bankruptcy context.

2. Should the Trustee have been required to start a turnover proceeding in order to receive the tax refund, thus allowing the United States to assert a right to setoff under § 553 of the Bankruptcy Code?

■ The court agrees with the bankruptcy court that this question is not pressing, since there is no reason why the United States cannot exercise its right to setoff any debts owed to it against the debtor's tax refund regardless of whether an adversary proceeding, e.g. a motion for turnover, is commenced. An adversary proceeding is not needed to justify a setoff, therefore the Trustee was not required to bring one.

The government raises the possibility of disagreements between the Trustee and other debtors over who should get tax refunds, citing the case of *In re Gonzalez,* 42 B.R. 401 (Bkrtcy.N.D.Ga.1984). *Gonzalez,* however, is inapplicable, since the debtor's confirmed plan in that case did not call for his tax refund to be used to fund his Chapter 13 plan, meaning that the debtor was entitled to the refund. In the case at bar, the plan provides that the tax refund is to go to the Trustee, so there is no disagreement between the Trustee and the debtor on this point. The court is confident that the bankruptcy court can resolve any future conflicts of the type discussed by the government.

3. Does the Anti–Assignment Act, 31 U.S.C. § 3727, prohibit the bankruptcy court from ordering that the United States forward the debtor's tax refunds to the Trustee?

■ "The Anti–Assignment Act (31 U.S.C. § 3727) unambiguously excuses the United States from purported private assignments of income tax refunds prior to submission of the tax return and allowance of the refund by the Internal Revenue Service ..." *Knight v. United States,* 596 F.Supp. 540, 542 (M.D.Ga.1984), *aff'd,* 762 F.2d 1022 (11th Cir.1985). The United States makes a strong argument that this statute bars the bankruptcy court from ordering the Internal Revenue Service from sending the debtor's tax refund to the Trustee. The Act provides that for an assignment to be valid it must, among other things, be made after a claim is allowed. Since the debtor's tax return serves as a claim for a refund, the government argues, no assignment could be valid until after the return is filed. (Under this argument, the debtor's refund for 1991 could be validly assigned because the return has already been filed, but since the possibility of refunds during the remainder of the life of the Chapter 13 plan exists the question is not moot.) The court considers the bankruptcy court's order under § 1325(c) to be a confirmation of the assignment made when the debtor included his tax refund in his Chapter 13 plan; the parties appear to agree on this point.

Case law analogous to this question concerns the Social Security Act. In *United States v. Devall*, 704 F.2d 1513, 1514–15 (11th Cir.1983), the Eleventh Circuit held that social security payments were subject to income deduction orders issued by bankruptcy courts pursuant to § 1325(c), since this provision prevailed over the more general anti-assignment provision of the Social Security Act, 42 U.S.C. § 407. The opposite conclusion was reached in *In re Buren*, 725 F.2d 1080 (6th Cir.), *cert. denied, Hildebrand v. Social Sec. Admin.*, 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984), where the court noted that § 407 was not included in the Bankruptcy Code's list of statutes repealed or modified by the Code's definition of the debtor's estate and that there was no reason to believe that § 407 had been repealed by implication. *Id.* at 1085–87. The court also noted that Congress had subsequently modified § 407 to forbid assignments of social security payments by bankruptcy courts, but then held that this new version of the statute did not apply retroactively and so did not rely on this fact as a basis for its decision. *Id.* at 1087.

Likewise, that part of Title 11 of the United States Code cited by the court in *Buren*, 725 F.2d at 1083, as not listing § 407 as among those statutes repealed or modified by the Bankruptcy Code also does not mention the Anti–Injunction Act, meaning that § 1325(c) has not explicitly repealed or modified the Act. Given the court's belief that a tax refund constitutes income, however, it is apparent that the powers given to a bankruptcy court by the language of § 1325(c) are in conflict with the Anti–Assignment Act. Despite the rule of statutory construction stating that changes by implication are disfavored, *Id.* at 1085, the court concludes, similarly to the court in *Devall*, 704 F.2d 1513, that § 1325(c) has impliedly modified the Anti–Assignment Act to allow the assignment of tax refunds to the Trustee via income deduction orders. This is in keeping with the rule that all laws are presumed to be consistent with each other. *In re Sampson*, 95 B.R. 66, 66 (Bkrtcy.W.D.Mich.1988).

This holding is supported by the fact that there appears to have been no action taken by Congress in the area of tax law forbidding the application of income deduction orders to tax refunds similar to that body's modification of § 407 to prevent bankruptcy income deduction orders from applying to social security benefits. Additionally, the language of the Anti–Assignment Act contains no provision, even one added by amendment, stating that the statute is not subject to bankruptcy law. Also, an examination of the Act shows that it and its amendments were passed well before the Bankruptcy Code was approved in 1978, meaning that Congress must have been aware of the existence of the Act when it approved of the broad powers given to the bankruptcy court by § 1325(c).

Moreover, this case can be distinguished from an assignment of the type disallowed in *Knight*, 596 F.Supp. 540, where the plaintiffs, engaged in the business of discounting federal income tax checks of private individuals, unsuccessfully attempted to force the Internal Revenue Service to honor a taxpayer's assignment of his refund to them. Clearly, assignments of this type should be scrutinized carefully, since "[p]romiscuous assignments of income tax refunds ... could lead to frauds, undue influence and duress inflicted by relative, 'friends' or con men." *Sampson*, 95 B.R. at 66–67. Here, the debtor voluntarily included his tax refund in his confirmed Chapter 13 plan which was then supported by an order from the bankruptcy court, presumably enough to guard against the dangers listed above.

4. Should the bankruptcy court's orders have been issued without requiring the Trustee to initiate an action to recover property under Bankruptcy Rule 7001?

■ In its final argument the United States contends that in order to collect the debtor's tax refund, the Trustee should have been required to initiate an adversary proceeding via an action to recovery property under Bankruptcy Rule 7001. The government therefore reasons that it was entitled to proper notice of this action and should have been allowed to conduct dis-

covery as allowed by Rules 7030–36. *In re Brumlik*, 132 B.R. 495, 499–500 (M.D.Ga. 1991).

The initial order by the bankruptcy court was issued *ex parte*. After the United States moved the bankruptcy court to alter or amend that order, a hearing was held just over two months later. Two factors are thus present: (1) a hearing was held and (2) two months passed between the filing of the motion and the date of the hearing. When these are considered, it is apparent that the United States was not prejudiced by the *ex parte* nature of the original order but was given ample time to develop its case. There is no indication that discovery was sought before the hearing or that the government raised this point during or after the hearing. The court therefore need not decide whether an income deduction order of this nature is an adversary proceeding requiring notice and discovery for, unlike *Brumlik*, there has been neither a showing nor a claim, in either the bankruptcy court or this court, that the government was unable to sufficiently present its case due to the nature of the bankruptcy court's proceedings.

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.

SO ORDERED.