**In re Robert M. SERNA, Sr. and Anita C. Serna, Debtors.**

**Bankruptcy No. 94–2172–PHX–CGC.**

United States Bankruptcy Court, D. Arizona.

Feb. 26, 1996.

Edward Doney, Tempe, AZ, for Debtors.

Albert M. Rau, Phoenix, AZ, Trustee Assigned.

### ORDER RE SIXTY MONTH LIMITATION FOR CHAPTER PLAN

CHARLES G. CASE, II, Bankruptcy Judge.

### I. INTRODUCTION.

Before the Court is the Debtors' modified plan, filed October 13, 1995 (the "Modified Plan"). The Trustee objected to confirmation of the Modified Plan, asserting that the plan's term exceeds the five year limitation in 11 U.S.C. § 1329(c). An initial confirmation hearing on the Modified Plan was held on November 28, 1996. The parties briefed the issues and a subsequent hearing was held on February 6, 1996, after which the matter was taken under advisement.[1]

### II. FACTS.

This case was filed March 8, 1994. The original plan was filed on March 22, 1994, confirmed on October 19, 1994, and provided:

---

**1.** The hearing in this matter was consolidated with *In re Hasler,* case number 93–3042, in which the identical issue was before the Court; a separate Order will be entered for that case.

Debtors shall pay $407.00 per month to the Trustee, on or before the fifteenth (15) day of each month, commencing April 15, 1994.... This plan shall continue for fifty-six (56) months from the first payment. If at any time before the end of this period all claims are paid, the plan shall terminate.

In addition, attached to the original plan is a 56 month payment schedule that begins in April, 1994 and ends in October, 1998.

The Modified Plan provides that payments will continue more than sixty (60) months after the date the first payment was due under the original plan (which in this case is the same date as the first interim payment made after commencement of the case). However, all payments will be completed within sixty months of the date the first payment was due after confirmation of the original plan.

## III. DISCUSSION.

Precisely when does the 60 month time period under a Chapter 13 plan begin to run: when the first payment is made, after the plan is confirmed, or on some other date?

At least three code sections are potentially relevant. Section 1322(d) provides [2]:

(d) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.[3]

**Thus, Section 1322(d) refers only to "payments."**

Section 1326(a) provides:

(a)(1) Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.

(a)(2) A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.

**Thus, Section 1326(a) refers to "payments proposed by a plan."**

Section 1329(c) provides:

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

**Thus, Section 1329(c) refers to when "the first payment under the original confirmed plan was due."**

Although each of these three sections uses similar language, it does not necessarily follow that the term "payment" means the same in each. See, e.g., *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) ("allowed secured claim" in Section 506(d) not the same as "allowed claim of a creditor secured by a lien" in Section 506(a)). Therefore, there is ambiguity in the statute that needs resolution through reference to case law.

■■■ Two Ninth Circuit BAP opinions are relevant and cited by the parties.[4] In *In*

---

**2.** Section 1322(d) was previously numbered Section 1322(c) prior to the Bankruptcy Reform Act of 1994. Therefore, while the cases cited below refer to Section 1322(c), the text of the statute is the same as quoted here.

**3.** The House Judiciary Committee Report for this section provides:

On the other hand in certain areas of the country, inadequate supervision of debtors attempting to perform under wage earner plans have (sic) made them a way of life for certain debtors. Extensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to involuntary servitude....

H.R.Rep. No. 595, 95th Cong., 1st Sess. 117 (1977), *cited in 5 Collier on Bankruptcy*, para. 1322.15 at 1322–53.

**4.** The decisions of the Bankruptcy Appellate Panel are binding precedent on bankruptcy courts and are controlling in all cases when the facts and law are applicable. *See In re Windmill Farms, Inc.*, 70 B.R. 618 (9th Cir. BAP 1987).

*re Martin,* 156 B.R. 47 (9th Cir. BAP 1993), the debtor filed her first Chapter 13 petition on February 5, 1992, and her first Chapter 13 plan was confirmed on March 26, 1992. When her disability income was reduced, she failed to make plan payments and her case was dismissed on September 29, 1992. When her disability was subsequently increased and fixed, the debtor filed her second Chapter 13 petition on October 28, 1992; in that plan, she provided for payment of the secured debt on her residence over a sixty month period.

The secured creditor argued, among other things, that the second plan violated Section 1322(c) because repayment was extended beyond the sixty month maximum, calculated from the date of the first payment under the first plan. The bankruptcy court overruled the secured creditor's objection and confirmed the second plan. On appeal, the BAP affirmed the bankruptcy court and held:

> The final question is whether Martin's second plan violates Section 1322(c) because the payments to United extended beyond 60 months from Martin's first Chapter 13 plan. *The 60 month time period begins to run from the date the first payment becomes due after confirmation of the debtor's Chapter 13 plan. West v. Costen,* 826 F.2d 1376, 1378 (4th Cir.1987) and *In re Eves,* 67 B.R. 964, 967 (N.D.Ohio 1986); *c.f., In re Duckett,* 139 B.R. 6, 7–8 (E.D.Tex.1992) and *In re Cobb,* 122 B.R. 22, 26–27 (E.D.Pa.1990) (60 month period runs from date debtor is first obligated to make payments; 45 days after filing the case); *In re Woodall,* 81 B.R. 17, 18 (E.D.Ark.1987) (60 month period runs from entry of order to commence payments).

The second plan was confirmed on February 9, 1993. Although the creditor's objection in *Martin* was that the sixty months should run from the *first* of the serial cases, the Bankruptcy Appellate Panel's decision that the plan was confirmable was necessarily grounded in a determination that the sixty months began to run from the first payment due after confirmation of the plan filed in the *second* case and not from the first payment made after commencement of the *second*

case. This is true because the second case was filed on October 28, 1992; therefore, the first interim payment was due in December, 1992. However, the plan was confirmed in March, 1993 with payments to run through March, 1998. Without a holding that the sixty months began to run in March, 1993, the case could not have been confirmed and the lower court would necessarily have been reversed.

In the second and more recent BAP case, *In re Nicholes,* 184 B.R. 82 (9th Cir. BAP 1995), the debtor's eligibility under Section 109 was at issue. The bankruptcy court denied confirmation of debtor's Chapter 13 plan. On appeal, the BAP remanded the case with instructions regarding liability on disputed debts. In explaining the need for expeditious determination of eligibility requirements under Section 109, the *Nicholes* Panel stated:

> Under Chapter 13, a debtor must complete plan payments within 36 months or, with leave of court, not later than 60 months. 11 U.S.C. § 1322(c). This time period begins running from the date at which the Chapter 13 debtor is first obligated to begin making payments to the trustee under the unconfirmed plan—i.e. within 45 days after the petition is filed [FN5]—as opposed to the date at which the first payment becomes due under the confirmed plan. *In re Duckett,* 139 B.R. 6 (Bankr. E.D.Tex.1992); *see also In re Woodall,* 81 B.R. 17 (Bankr.E.D.Ark.1987).

The BAP's comments concerning the 60 month period and when it begins to run are not necessary to the determination of Section 109 eligibility and are dicta. Further, the Panel did not discuss *Martin* and engaged in no analysis of the statutory language. Therefore, this Court will follow *Martin* rather than *Nicholes.*

The only Court of Appeals to address this has held that the 60 month period begins to run from the first payment due after confirmation of the plan. *See West v. Costen,* 826 F.2d 1376 (4th Cir.1987). In analyzing Section 1329(c), the Fourth Circuit explained:

> Although Costen filed his original plan on May 4, 1981, and the bankruptcy court ordered him (on May 12) to start making

payments with the next pay period, the plan was not confirmed until September 4, 1981. The due date of the first payment after September 4 was "the time that the first payment under the original confirmed plan was due." Id. Payment under the modified plan could therefore have extended until September 1986 and, since Costen made his final payment in July 1986, he met the five year statutory deadline.

*West* is cited with approval by the BAP in the *Martin* opinion.

Finally, in light of the ambiguity in the statutes and the inconsistent case authority, this Court notes that there is no discernable policy reason why Congress would have intended a restrictive interpretation of statutes whose purpose is to facilitate the rehabilitation of debtors and the repayment of creditors.[5]

## IV. CONCLUSION.

For the reasons discussed above, **IT IS ORDERED** as follows:

1. The Trustee's objection to the term of the Modified Plan is overruled.

2. A further hearing on confirmation of the Modified Plan is scheduled for March 26, 1996, at 1:30, 2929 N. Central Ave., 10th Floor, Courtroom 6, Phoenix, Arizona, 85012, to resolve any outstanding confirmation issues.

---

**5.** This policy is not contrary to Congress' expressed concern regarding involuntary servitude, as the Chapter 13 debtor seeking to modify a plan *chooses* modification over the alternative of liquidation under Chapter 7, and still is limited to a plan with a maximum of sixty payments post-confirmation. *See* fn. 3, *supra.*