**In re Andrew PROFIT and Marilyn Profit, Debtors.**

No. 96–30871.

United States Bankruptcy Court, D. Nevada.

Oct. 9, 2001.

Michael Lehners, Reno, NV, for Trustee.

Christopher Burke, Reno, NV, for Debtors.

## ORDER RE TRUSTEE'S MOTION TO MODIFY PLAN

GREGG W. ZIVE, Bankruptcy Judge.

### I. PROCEDURAL HISTORY

This matter came on regularly for hearing before Gregg W. Zive, U.S. Bankruptcy Judge, on Trustee's Motion to Modify Plan and to Compel Debtors' Amendment of Schedules ("Motion to Modify"). Appearing on behalf of the Debtors was Christopher P. Burke, Esq.; appearing for the Chapter 13 Trustee, Annabelle Savage ("Trustee"), was Michael Lehners, Esq.

The Motion to Modify, filed December 13, 2000, was set for hearing on January 9, 2001. It sought to compel Debtors to amend their schedules and to modify their confirmed plan to pay all allowed unsecured claims based upon the allegation the Debtors had inherited a substantial amount of money several years post petition. Debtors opposed the motion on several grounds, including that the inheritance was not property of the estate.

An initial hearing was conducted January 9, 2001, during which the court made certain tentative conclusions regarding whether the Trustee could seek to modify, the legal and factual predicates necessary to obtain a modification, whether an inheritance received more than 180 days after the petition filing date was property of the estate and, if so, whether the inheritance was subject to creditors' claims (whether it might be exempt or not considered disposable income) and whether the liquidation analysis required by § 1325(a)(4)[1] is applied at time of modification. Many of these issues were not adequately briefed by counsel, so in addition to ordering the Debtors to amend their schedules, a briefing schedule was imposed and the hearing continued to February 28, 2001.

Counsel submitted additional memoranda of points and authorities and it was revealed for the first time that, instead of an inheritance, Mr. Profit's former employer died and forgave Debtors' debt regarding a house and real property located in Palm Springs, California, that Debtors subsequently sold and used the proceeds of the sale to buy a residence in North Carolina. This significant change of facts presented additional issues that the parties asserted needed to be addressed.

The Trustee filed an Objection to Claim of Exemption on February 21, 2001, regarding the Debtors' claimed exemption for real property located in North Carolina. That objection was opposed, but the hearing was continued until the Motion to Modify was resolved.

At a hearing conducted February 28, 2001, during which the court heard and considered argument of counsel, due to the significant change of facts and the exemp-

---

1. Unless otherwise indicated, all references to Chapter, sections and rules are to the Bankruptcy Code, 11 U.S.C. §§ 101, et seq., and the Federal Rules of Bankruptcy Procedure, Rules 1001, et seq.

tion issue, additional research was needed and a continued status conference was set for May 16, 2001. Trustee's counsel was ordered to notice the continued status conference to all creditors because of Debtors' contention the Motion to Modify was not property noticed. An amended notice of hearing was filed March 5, 2001, and an affidavit of mailing was filed March 6, 2001, certifying that both the Motion to Modify and the amended notice was served upon the entire creditors matrix.

Due to a conflict with the court's calendar, the May 16, 2001, status conference was continued. On August 10, 2001, Debtors filed a Supplement to Record and Argument to which the Trustee responded on August 16, 2001. Debtors' reply was filed August 24, 2001. The court will consider these late three pleadings because they contain salient factual matters and it serves no purpose to resolve issues that no longer may be relevant due to a change in circumstances. This written decision is in lieu of a continued status hearing.

## II. FACTUAL HISTORY

Based upon the pleadings and undisputed facts the following constitute the court's findings of fact:

Andrew and Marilyn Profit ("Debtors") filed for Chapter 13 relief on May 9, 1996. Debtors scheduled a residence in Reno, Nevada, as exempt property pursuant to NRS 115.010. Debtors did not amend their schedules to relinquish or change their homestead exemption prior to the Motion to Modify. A plan was confirmed October 22, 1996. Pursuant to the plan, Debtors were to pay a total of $26,000 over 60 months and were to pay over to the Trustee any tax refunds received during the life of the plan. Debtors did remit their tax refunds to the Trustee for 1995 and 1996. There was no tax refund for 1997. Contrary to the plan's provision,

Debtors chose to apply their 1998 refund to their 1999 tax liability. The Debtors finally paid their tax refund to the Trustee on January 19, 2001, after the Motion to Modify had been filed and after the initial hearing regarding the Motion to Modify. The Internal Revenue Service audited Debtors' 1999 return and in either April or May of 2001 informed Debtors that not only were they not entitled a refund for 1999, but they owed the IRS $6,958.00.

The Debtors lived in Palm Springs, California, in 1998 and 1999 when Mr. Profit worked for Gene Whitworth ("Whitworth"). Debtors were purchasing a home in Palm Springs from a trust Whitworth controlled by paying off a personal note they executed. In late 1999 Whitworth died. His estate forgave the remaining indebtedness on the note in the approximate amount of $146,000 and transferred title to the house to the Debtors. Debtors never sought permission to enter into debt for the Palm Springs property nor did they amend their schedules to reflect the forgiveness of the debt. However, their 1999 tax return did include the forgiveness of debt as income. Although the initial pleadings in this case attempted to characterize this amount as an inheritance, it now appears that the parties agree that this was a forgiveness of debt.

In June of 2000, Debtors sold the Palm Springs property without order of the court for $168,000. Subsequently Debtors used some of the proceeds from the sale of the Palm Springs home to purchase a home in North Carolina. The North Carolina property is now subject to the disputed claim of exemption.

In October 2000, Debtors notified the Trustee of the additional income and requested to use it to pay the remainder of the plan. Consequently, Debtors paid the entire $26,000 contemplated by the plan,

excluding the tax returns, prior to the Motion to Modify being filed.

On December 13, 2000, the Trustee filed the Motion to Modify Plan. Debtors opposed, arguing that the plan payments had been made and therefore the motion to modify was not timely.

On January 19, 2001, Debtors paid their tax refund to the Trustee. On February 5, Debtors amended their schedules to reflect their interest in the North Carolina property in the amount of $140,000, and declaring $125,000 as exempt under NRS 115.010. Debtors have not amended the record to reflect their relinquishment of the Nevada property as their homestead. As noted, the Trustee has objected to Debtors' claim of exemption.

### III. ANALYSIS

■ The Trustee's Motion to Modify is based on § 1329(a). The Trustee bears the burden of proof to show facts supporting modification of the plan. *In re Than,* 215 B.R. 430, 434 (9th Cir. BAP 1997).

A. *Timeliness of the Trustee's Motion to Modify.*

Section 1329(a) provides that:

At any time after confirmation of the plan, but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payment; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

The issue that arises under these facts is whether the 1998 tax refund which was applied to the Debtors' 1999 tax liability and the 1999 refund were plan payments. If not, the plan is complete and cannot be modified. However, if tax refunds are considered plan payments, the Debtors failed to complete the plan prior to the Motion to Modify being filed and the Motion to Modify is timely. This is true even though it has been determined there was not a refund due for 1999. Debtors had applied their 1998 refund to their 1999 tax liability rather than paying it to the Trustee for the benefit of their unsecured creditors.

The Debtors' plan provided that the Debtors "shall turn over their tax refunds to the Trustee for the term of the plan." The Ninth Circuit has held that a Chapter 13 plan is confirmable over a Trustee's objection that a plan does not require turn over of tax refunds, where such refunds are not actually projected. *In re Anderson,* 21 F.3d 355, 357–58 (9th Cir. 1994). While the ruling in *Anderson* is binding upon this court, it is inapplicable to the facts of this case.

■ In the case at bar, the record reflects no objection to confirmation. The plan was consensual and, therefore, the provision for the turnover of tax refunds to the Trustee became part of the plan upon its confirmation. "If a creditor fails to protect its interest by timely objecting to a plan or appealing the confirmation order, 'it cannot later complain about a certain provision contained in a confirmed plan, even if such a provision is inconsistent with the Code.'" *In re Pardee,* 193 F.3d 1083, 1086 (9th Cir.1999), *quoting Andersen v. UNIPAC–NEBHELP,* 179 F.3d 1253, 1258 (10th Cir.1999). This principle applies equally to the debtor.

■ Confirmation orders are final even if the confirmed plan contains illegal provisions. *Pardee*, 193 F.3d at 1086. A confirmed plan is binding on all parties and objections which could have been raised prior to confirmation are barred by res judicata. *Lawrence Tractor Co. v. Gregory*, 705 F.2d 1118, 1121 (9th Cir. 1983).[2]

■ Debtors confirmed plan includes a provision that all tax refunds be paid to the Trustee. Therefore, the turnover of the tax refunds are plan payments. This is consistent with the holding of *In re Cochran*, 141 B.R. 270, 272 (M.D.Ga.1992) that tax refunds qualify as income. This court adopts the reasoning of the *Cochran* court. Because the Debtors applied the 1998 refund to the 1999 liability instead of paying the refund to the Trustee, the Debtors have failed to make all plan payments and the plan is not yet complete. Since the Debtors had not completed their plan prior to the Motion to Modify, the equitable doctrine of laches is not applicable because of the Trustee's statutory right to seek plan modification. *In re Than*, 215 B.R. at 435.

Finally, Debtors did not amend schedules in 1999 as required by FED.R.BANKR.P. 1007(h) to reflect their interest in the Palm Springs property or the forgiveness of indebtedness depriving Trustee of ability to seek modification at an earlier time. For all the foregoing reasons, the Trustee's Motion to Modify is timely.[3]

---

**2.** However, as noted in *In re Than*, 215 B.R. at 434, res judicata does not bar the trustee from seeking to modify the plan pursuant to § 1329. *See also Barbosa v. Soloman*, 235 F.3d 31, 38–41 (1st Cir.2000); *In re Powers*, 202 B.R. 618, 622 (9th Cir. BAP 1996).

**3.** The Ninth Circuit Bankruptcy Appellate Panel has held that § 1329 is clear and unambiguous and does not require a change in the debtor's circumstances for a trustee to seek modification of the plan. *In re Powers*, 202

B. *Property of the Estate.*

■ The next issue is whether the forgiveness of debt income on the Palm Springs property constitutes property of the estate and, if so, whether that value is available to the Debtors' creditors. Section 1306 provides, in pertinent part, as follows:

(a) Property of the estate includes, in addition to the property specified in Section 541 of this title,

(1) All property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted to a case under Chapter 7, 11 or 12 of the title, whichever occurs first;

Because, unlike a Chapter 7 liquidation case, *In re Anders*, 151 B.R. 543, 545 (Bankr.Nev.1993), after-acquired property is included in a Chapter 13 estate, § 1306(a)(1), the forgiveness of debt as realized by the proceeds of the Palm Springs property is property of the estate, unless exempt. *In re Euerle*, 70 B.R. 72, 73 (Bankr.N.H.1987).

The question then becomes whether the forgiveness of debt, which in this case has resulted in a tangible asset as the proceeds from the Palm Springs property, is subject to the claims of the Debtors' creditors.

1. Income.

■ Section 1329(b)(1) makes § 1325(a) applicable to modification, but

---

B.R. 618, 622 (9th Cir. BAP 1996). However, § 1329(a)(1) limits the kind of modifications that can be proposed and § 1329(b)(1) protects the parties from unwarranted modification by specifying that §§ 1322(a), 1322(b), 1323(c) and 1325(a) apply to plan modifications. *Powers* at 622; *In re Burgie*, 239 B.R. 406, 408–09 (9th Cir. BAP 1999). There is no contention the trustee has violated any of those statutes' standards.

does not make § 1325(b) applicable on the facts of this case because modification is being sought by the Trustee. *In re Than,* 215 B.R. at 436; § 1325(b)(1). The plain language of § 1329 compels this court to apply the best interest of creditors test of § 1325(a)(4) to the Trustee's Motion to Modify, *Barbosa v. Soloman,* 235 F.3d 31, 38 (1st Cir.2000).

Section 1329(b)(1) also makes 1322(a) and (b) applicable to plan modification. Section 1322(a)(1) requires the plan to "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan . . . ." The question then is whether the forgiveness of indebtedness is considered income.

*In re Burgie,* 239 B.R. 406 (9th Cir. BAP 1999) held that the proceeds of the sale of debtor's prepetition property is not income, regardless of whether the property sold was exempt. Although the *Burgie* case involved prepetition property, it provides this court with guidance as to the definition of income for purposes of § 1322. The test "is whether the asset in question is an anticipated stream of payments. If it is a stream of payments, the payments must be included in projected income. If the asset is not a stream of payments, it is not included." *Burgie,* 239 B.R. at 410. Other jurisdictions have held likewise in similar circumstances (*See, e.g., In re Solomon,* 67 F.3d 1128 (4th Cir. 1995)) (withdrawals from individual retirement accounts were not income or income replacements because debtor was not receiving a regular distribution); *In re Bicsak,* 207 B.R. 657 (Bankr.W.D.Mo.1997) (monthly payroll deductions from a thrift savings plan could be included in the calculation of a Chapter 13 disposable income to determine whether a Chapter 7 case could be dismissed as a substantial abuse).

*Burgie* carried this analysis one step further and diluted the distinction between a "lump asset" and a stream of payment, holding that the proper inquiry is whether the assets are income or income substitutes. *Burgie,* 239 B.R. at 411.

▆ In this case, the proceeds from the sale of the Palm Springs property, which resulted from Whitworth's forgiveness of an indebtedness, are analogous to the assets at issue in the *Burgie* case. As such, the proceeds do not constitute future earnings or future income of the debtor for purposes of § 1322(a)(1).

2. Application of Best Interest of Creditors Test.

The forgiveness of indebtedness is property of the estate and while not constituting future income or future earnings, must be analyzed for the purpose of the best interest of creditors test adopted at § 1325(b)(4) and applicable to motions to modify by § 1329(b)(1).

There is disagreement as to how to apply the § 1325(a)(4) test. Some courts, such as the Eighth Circuit Bankruptcy Appellate Panel, apply the test as of the effective date of the original plan notwithstanding § 1329. *In re Forbes,* 215 B.R. 183 (8th Cir. BAP 1997). That decision has been criticized as being at odds with the logic of § 1329(a) and that application of the rule articulated in *Forbes* produces odd outcomes for other tests under § 1329(a). 3 Lundin, Chapter 13 Bankruptcy, § 254.1, at 254-3—254-5 (3d Ed.2000).

The contrary approach is one adopted by recalled Bankruptcy Judge Bert M. Goldwater in an unpublished written order dated July 12, 2000, in the bankruptcy case of Kenneth W. Henry and Frances E. Henderson, Case No. 96–31437 (Bankr. Nev.). In his order (Docket No. 99),

58

Judge Goldwater cited the Bankruptcy Amendments and Federal Judgeships Act of 1984 (Pub.L. No. 98–535) as his basis for rejecting the *Forbes* rule. Judge Goldwater's analysis is consistent with that of Judge Keith Lundin who opined at page 254–7 of his treatise, "Defining the effective date of the plan at modification as the effective date of the modified plan respects the language in § 1329(b)(2) that substitutes the modified plan for the plan as originally confirmed. This interpretation recognizes that the passage of time between confirmation and modification changes the facts of a Chapter 13 case. Changes may benefit the debtor or benefit creditors, when the tests in §§ 1322 and 1325 are applied as of the effective date of the plan as modified." 3 Lundin, Chapter 13 Bankruptcy, at 254–7.

The majority of courts agree with Judge Lundin and apply § 1325(a)(4) as of the time of modification. Since "modification is essentially a new plan confirmation and must be consistent with the statutory requirements for confirmation," *In re Than*, 215 B.R. at 434; *In re Powers*, 202 B.R. at 623, it is logical to apply § 1325(a)(4), as mandated by § 1329(b)(1), at time of modification. The First Circuit in*Barbosa v. Soloman*, 235 F.3d 31 (1st Cir.2000) affirmed the District Court which had affirmed a bankruptcy court's decision in a Chapter 13 modification dispute. *In re Barbosa*, 236 B.R. 540 (Bankr.Mass.1999). The bankruptcy judge granted the Chapter 13 trustee's motion to modify and in doing so had to determine the time for applying the best interest of creditors test. The bankruptcy judge quoted from an earlier edition of Judge Lundin's treatise and analyzed other bankruptcy court decisions before rejecting the rationale of *Forbes* and holding the liquidation value test of § 1325(a)(4) is applied as of the effective date of the plan as modified. *Id.* at 552–54. The First Circuit left undisturbed the

bankruptcy judge's holding, as had the district court, while noting the plan as modified must comply with all applicable provisions of the Code which means it must be proposed in good faith (§ 1325(a)(3)) and satisfy the best interest of creditors test. *Barbosa*, 235 F.3d at 35.

*In re Walker*, 153 B.R. 565 (Bankr.Or. 1993) involved a creditor's objection to the debtor's proposed plan modification. That court, relying on the statutory language and legislative history of § 1329(b), held that § 1325(a)(4) shall be applied as of the effective date of the modified plan. *Id.* at 568. *Accord, In re Martin*, 232 B.R. 29, 38 (Bankr.Mass.1999). In *In re Guentert*, 206 B.R. 958 (Bankr.W.D.Mo.1997), following confirmation of a joint Chapter 13 plan, one of the joint debtors died and the surviving spouse/joint debtor moved to pay off the remaining plan balance with the life insurance proceeds of the deceased spouse/ joint debtor. The Chapter 13 trustee's objection was sustained. First, the court found that while the life insurance proceeds might not have been property of a Chapter 7 bankruptcy estate (§ 541(a)(5)), in a Chapter 13 those same benefits do become property of the estate until the case is closed, dismissed or converted (§ 1306(a)). "Property that comes into the estate post-confirmation remains property of the estate. I, therefore, find that the insurance proceeds are property of the estate." *Id.* at 962 (citations omitted.) The court then went on to hold that it "stands to reason that any property that has become property of the estate post confirmation must be calculated in the best interest of creditors' test before any plan modification can be confirmed." *Id.* at 963.

█ I agree with the courts and commentators that hold the best interests of the creditors test, or liquidation value test,

of § 1325(a)(4) must be applied at time of plan modification because the effective date of the plan for purposes of that test at modification is the effective date of the plan as modified and not the effective date of the original plan. To find otherwise would in effect ignore the language of § 1329(b)(2). Therefore, the forgiveness of debt, as represented by the sales proceeds of the Palm Springs property, is property of the estate and, while not disposable income, must be considered at time of modification pursuant to §§ 1329(b)(1) and (2) and 1325(a)(4). Unless exempt, the Trustee's Motion to Modify must be granted because the Palm Springs property sales proceeds must be made available for Debtor's unsecured creditors.[4]

## IV. CONCLUSION

 The forgiveness of indebtedness as represented by the proceeds of sale of the Palm Springs property is property of the estate that must be accounted for pursuant to §§ 1329 and 1325(a)(4) at the time of modification. Unsecured creditors would have been paid in full, in the absence of any exemption, from the proceeds. Therefore, they, and not the Debtors, at least up to the amount of the unsecured claims, should realize the benefit of that property of the estate and the Motion to Modify must be granted. To do otherwise would contravene the Debtors' obli-

gation of good faith. § 1325(a)(3). It is axiomatic that Congress intended Chapter 13 debtors to repay their creditors to the extent of their ability to do so during the duration of the plan. As noted in *In re Barbosa*;

> Overriding all other concerns is the issue of good faith. In view of congress's intent in enacting chapter 13 to encourage debtors to repay their debts to the best of their ability, it would be anomalous for this Court to determine that the Debtors can retain the excess proceeds from the sale of the Property without satisfying their unsecured claims.

236 B.R. at 555–56.

The Debtors have the ability to pay their unsecured creditors and, in the absence of a qualified exemption, the estate has the property to satisfy those claims. That result is consistent with and adheres to the provisions and purposes of the Bankruptcy Code.

THEREFORE, IT IS ORDERED that Trustee's Motion to Modify is CONDITIONALLY GRANTED, subject to resolution of the objection to claimed exemption.

---

4. There is pending an objection to claim of exemption by the Trustee to the Debtors' claimed exemption in their February 5, 2001 amendments to their schedules. Until the schedules were amended (after the Motion to Modify was filed) and the Trustee's objection filed, this court could not make a determination regarding the claimed exemption. While not before me at this time, the court is cognizant that exemptions are claimed at the time petitions are filed, that the Debtors claimed an exemption in Nevada property and that while proceeds of exempt property

are exempt up to the amount of the allowed exemption, the claimed exemption was not purchased with proceeds from the exempt Nevada property. Moreover, the Debtors purchased the property in North Carolina from the proceeds of the Palm Springs sale, none of which was done with court approval or in compliance with Rule 1007(h). Therefore, the Debtors may have difficulty with § 522(g). *See, In re Wooten*, 82 B.R. 84 (N.D.Iowa 1986). Those issues are not being decided but will be set for hearing if the parties so wish.