**In re Andrew M. PROFIT; Marilyn Profit, Debtors.**

**Andrew M. Profit; Marilyn Profit, Appellants,**

v.

**Anabelle Savage, Chapter 13 Trustee, Appellee.**

**BAP No. NV–01–1526–MaNRy.**

**Bankruptcy No. 96–30871.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on July 25, 2002.

Filed Sept. 17, 2002.

Christopher P. Burke, Reno, NV, for Andrew and Marilyn Profit.

Michael Lehners, Reno, NV, for Anabelle Savage, Ch. 13 Trustee.

Before MARLAR, NAUGLE [1] and RYAN, Bankruptcy Judges.

### OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

After the chapter 13 [2] trustee ("Trustee") learned that Andrew and Marilyn Profit ("Debtors") had acquired, postconfirmation, potentially nonexempt residential real property, she filed a motion to compel them to amend their schedules and modify their confirmed plan to pay 100% of all allowed unsecured claims. The motion was filed in the plan's 54th month. The motion contained neither new plan provisions nor a method for recouping the asset's cash value, which had been transmuted into another alleged homestead.[3]

Notwithstanding these problems, the bankruptcy court granted Trustee's motion

---

1. Hon. David N. Naugle, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, "chapter," "section," and "Code" references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and rule references are to the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.P."), Rules 1001–9036, which make applicable certain

Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

3. In addition, Debtors objected that the motion was not properly noticed to all creditors and interested parties, and the bankruptcy court then ordered such notice. Debtors raised a notice issue in this appeal, but we do not reach it, based on our disposition reversing on other grounds.

and issued its order after the 60–month plan duration had expired and all payments had been completed. Its decision was published at *In re Profit*, 269 B.R. 51 (Bankr.D.Nev.2001).

We conclude that plan modification contravened the requirements of §§ 1322(a) and 1329(c), which require certain plan content and prohibit a modified plan from exceeding 60 months in duration, and we REVERSE. Debtors are entitled to a discharge.

## FACTS

### The Chapter 13 Plan

Debtors filed a chapter 13 petition on May 9, 1996. They claimed a $125,000 homestead exemption in their Reno, Nevada home.

On May 16, 1996, Debtors filed a proposed 60–month plan in which they agreed to make a total of $26,000 in monthly plan payments. Debtors estimated the liquidation value of their bankruptcy estate as $4,000. The unsecured creditors, with listed debts totaling about $84,500, would receive approximately 4% of their allowed claims under chapter 7 liquidation. Thus, the plan amount exceeded the liquidation value, thereby meeting the "best interests of creditors" test, encoded in § 1325(a)(4).[4]

The chapter 13 plan was confirmed on October 22, 1996. The confirmation order

provided that Debtors were to turn over their tax refunds to Trustee, in addition to making the disposable income plan payments.

### Postconfirmation Events

From August, 1998 to July, 1999, Debtors lived in Palm Springs, California, where Mr. Profit worked for Mr. Gene Whitworth ("Whitworth"). Whitworth owned a house through a trust, which he controlled. Debtors lived in that house and were purchasing it by making payments to the trust pursuant to a personal note. Debtors neither sought nor obtained the bankruptcy court's approval to incur such debt.

When Whitworth died, his estate forgave Debtors' $150,000 indebtedness and transferred title of the house to them in October, 1999.[5] However, Debtors neither amended their bankruptcy schedules, nor did they, at that time, inform Trustee about the debt forgiveness or the Palm Springs house.

Debtors then sold the Palm Springs house in June, 2000, for about $168,000, and moved to North Carolina where, in August, 2000, they used some of the sale proceeds (the "Proceeds") to purchase another house. Debtors also used some of the Proceeds to pay off their chapter 13 plan payments. On October 9, 2000, Debtors' attorney finally informed Trustee of

---

4. Section 1325(a)(4) provides, in relevant part:

    (a) [T]he court shall confirm a plan if—
    . . . .
    (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. § 1325(a)(4).

5. Debtors listed this amount as "income" on their 1999 tax return, because forgiveness of debt operates as taxable income under the Internal Revenue Code. *See* 26 U.S.C. § 61(a)(12).

    We have held that the Internal Revenue Code does not dictate the definition of "income" for purposes of "disposable income" in a chapter 13 case. *See Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 797 n. 2 (9th Cir. BAP 1995). *See also The Cadle Co. v. King (In re King)*, 272 B.R. 281, 293 (Bankr.N.D.Okla. 2002) (citing cases).

the Proceeds in a letter, which stated, in pertinent part: "[T]he Debtors are requesting a payoff amount on their Chapter 13 Bankruptcy. They would like to pay the bankruptcy off with some inheritance money [6] they have received." (Letter from Kimberly Wilson, October 9, 2000.)

Trustee took no immediate action, other than accepting Debtors' lump sum plan payment in the amount of $8,850 on November 16, 2000. The projected plan payments of $26,000 were thereby completed, except that Debtors had not turned over an income tax refund for 1998.[7]

### The Motion to Modify

On December 13, 2000, in the 54th month of the chapter 13 plan, Trustee filed a motion to modify the plan and to compel Debtors to amend their schedules to include the value of the debt forgiveness, which they had acquired postpetition. Trustee also alleged that Debtors received a tax refund for 1998, which had not been turned over.

Trustee did not include new plan provisions with the motion, but merely stated that the purpose of the modification was to enable the unsecured creditors to receive the value of the acquired asset.

Debtors objected to the motion to modify, asserting, among many arguments, that the motion was untimely, as plan payments had been completed, and that the out-

standing tax refund was not a plan payment. They also argued that the debt forgiveness, represented by the Proceeds, was not property of the estate, but that if it was property of the estate, it was non-disposable income, which was not required in order to fulfill the plan. They also argued that the Proceeds, traced to the North Carolina property, were exempt under either Nevada or federal law.

On January 19, 2001, Debtors remitted the 1998 tax refund, which Trustee accepted without reservation. Debtors also amended their schedules to reflect their interest in the North Carolina property, in the amount of $140,000, and concurrently declared a $125,000 homestead exemption under Nevada law, but apparently they did not clarify the record by releasing their homestead exemption in the Reno house. Trustee objected to the claimed exemption, and separate proceedings were pending on that matter.

Following several hearings, the bankruptcy court entered its order on October 9, 2001.[8] Among the court's relevant findings and conclusions was its determination that the motion to modify was timely because all payments, including the tax refund, had not been made at the time the motion was filed. The court also determined that the "forgiveness of debt, as represented by the [Proceeds] of the Palm Springs property," was non-income property of the estate, which must be consid-

---

**6.** Both parties have since agreed that the asset in question was not an inheritance, but a forgiveness of debt, which was represented by the Proceeds. *See Profit*, 269 B.R. at 54.

**7.** In contravention of the plan terms, Debtors had applied the 1998 refund toward their 1999 tax liability. Subsequently, in 2001, Debtors learned that they were not entitled to a refund for 1999, but instead owed the IRS an additional $6,348.

**8.** This order was a combined order and opinion, and not a separate judgment. *See* Fed.

R. Bankr.P. 9021, incorporating Fed.R.Civ.P. 58 (stating that "every judgment shall be set forth on a separate document. A judgment is effective when entered [on the docket].") The purpose of the separate document rule is "to clarify when the time for an appeal begins to run." *Woosley v. Edwards (In re Woosley)*, 117 B.R. 524, 528 (9th Cir. BAP 1990). Neither party raised the separate document requirement, and therefore it has been deemed waived. *Id.* at 529.

ered when confirming the modified plan. *Profit*, 269 B.R. at 59. Therefore, the court determined that § 1329(b)(1) required the application of the "best interests of creditors" test to be applied as of the effective date of plan modification. Under that test, the liquidation value of the estate, including the Proceeds, exceeded the amount of scheduled payments under the original plan. Therefore, the court concluded that, unless the Proceeds were exempt property, they must be turned over to Trustee for distribution to the unsecured creditors.

The court "conditionally granted" the motion to modify, subject to resolution of the objection to the claimed exemption in a future proceeding. *Id.* at 59.

Debtors timely appealed the court's order, and the BAP motions panel then granted Debtors' motion for leave to appeal.

## ISSUES

1. Whether leave to appeal this interlocutory order is appropriate.
2. Whether Trustee's motion to modify the chapter 13 plan was timely filed before all plan payments had been completed, pursuant to § 1329(a).
3. Whether the motion to modify failed to comply with the requirements for plan contents and duration, pursuant to §§ 1322(a) and 1329(c), thereby rendering the remaining substantive issues moot.
4. Whether the Proceeds were distributable property of the chapter 13 bankruptcy estate.
5. Whether the "best interests of creditors" test of a modified plan was correctly calculated at the time of plan modification, rather than as of the effective date of the original plan.

## STANDARDS OF REVIEW

We review findings of fact for clear error and conclusions of law *de novo*. *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1110 (9th Cir.1998). Chapter 13 plan confirmation issues requiring only statutory interpretation are reviewed *de novo*. *Moen v. Hull (In re Hull)*, 251 B.R. 726, 730 (9th Cir. BAP 2000).

The confirmation of a modified plan is reviewed for an abuse of discretion. *Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 433 (9th Cir. BAP 1997). Under this standard, we will not reverse unless we have a definite and firm conviction that the court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors. *Id.*

## DISCUSSION

### A. Our Jurisdiction

We determine, *sua sponte*, our proper jurisdiction. *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 126 n. 1, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). A final order is necessary to establish appellate jurisdiction. 28 U.S.C. § 158(d). Ordinarily, a chapter 13 plan confirmation order, whether or not a modification, is a final order. *See Than*, 215 B.R. at 435; 11 U.S.C. § 1327(a).

"A disposition is final if it contains 'a *complete* act of adjudication,' that is, a full adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter." *Slimick v. Silva (In re Slimick)*, 928 F.2d 304, 307 (9th Cir.1990) (citations omitted) (emphasis in original).

In approving plan modification, the bankruptcy court determined that the Proceeds were property of the estate and also

applied the "best interest of creditors" test under § 1325(a)(4). However, the Proceeds had already been reinvested in real property in North Carolina, and the Debtors then claimed a homestead exemption in that property. Trustee's objection to this exemption claim was pending at the time of these proceedings. Thus, the bankruptcy court approved the plan modification *on the condition* that the Proceeds/real property would be determined to be nonexempt property.

The exemption issue was material to the § 1325(a)(4) analysis. *See McDonald v. Burgie (In re Burgie)*, 239 B.R. 406, 411 n. 8 (9th Cir. BAP 1999) (stating that exempt property is *not* included in the § 1325(a)(4) calculation). The bankruptcy court could not finally apply the test until the exemption objection had been litigated. Therefore, the court's order was expressly nonfinal and, thus, interlocutory.

■ We have discretion to grant leave to appeal an interlocutory order. 28 U.S.C. § 158(a)(3); Fed. R. Bankr.P. 8003. Debtors filed a motion for leave to appeal, which was granted by the BAP motions panel in its order dated April 11, 2002. We adopt the motions panel's ruling because we do not need to reach the § 1325(a)(4) issue. Rather, our review will focus on the timeliness of the motion to modify, in light of the completed plan. Resolution of this appeal involves controverted legal questions and will materially advance the termination of this litigation. *See Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 882 (9th Cir. BAP 1995).

**B. Tax Refunds Were Plan Payments; The Motion to Modify Was Timely Filed Before Completion of Plan Payments— § 1329(a)**

Section 1329 governs the modification of a confirmed chapter 13 plan. It provides that a plan may be modified upon the request of the debtor, the trustee or the holder of an unsecured claim. Modification may be granted for any of the following purposes:

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments; or (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a).

The request for modification must be made "any time after confirmation of the plan but before the completion of payments under such plan." 11 U.S.C. § 1329(a); H.R.Rep. No. 595, 95th Cong., 1st Sess. 431 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6386.

Debtors contend that the motion to modify was untimely filed after all plan payments were completed, and that remittance of the 1998 tax refund was irrelevant because tax refunds are not plan "payments" for purposes of § 1329(a).

■ Under § 1329(a), a chapter 13 plan cannot be modified in any respect after payments are completed. Courts have disagreed as to the meaning of "before the completion of payments under such plan." 11 U.S.C. § 1329(a). It is generally held that the payments alluded to are the payments required to be made by the debtor under the plan terms. 8 *Collier on Bankruptcy* ¶ 1329.07 at 1329–12 (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev.2002).

■ When Trustee filed the motion to modify, on December 13, 2000, Debtors had completed paying the specified amount of payments (with a lump sum), but had not remitted the tax refund for 1998. The

bankruptcy court carefully analyzed this issue, and we agree with its conclusion that the confirmed plan treated the tax returns as disposable income and, thus, as part of the intended plan payments.

"Disposable income," which is to be applied to make plan payments, is "all of the debtor's projected disposable income to be received in the [five-year] period beginning on the date that the first payment is due under the plan ...." 11 U.S.C. § 1325(b)(1)(B). We have held that the test for whether an asset is "disposable income" requires an inquiry into whether it is income or an income substitute, rather than whether the debtor receives it in a lump sum or "stream of payments." *Burgie*, 239 B.R. at 411.

In order to compel a debtor to turn over a tax refund, a chapter 13 trustee must prove that it constitutes income or an income substitute by projecting a certain amount of tax refund. *See Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 358 (9th Cir.1994); *Itule v. Heath (In re Heath)*, 182 B.R. 557, 559–60 (9th Cir. BAP 1995) (the trustee must show that the debtor may receive tax refunds during the plan term in order to require the debtor to commit such refunds to the plan); *In re Kuehn*, 177 B.R. 671, 673 & n. 1 (Bankr. D.Ariz.1995).

The bankruptcy court in the case at bar correctly distinguished *Anderson* from the facts of this case, because Trustee did not attempt to compel turnover of the refunds. Instead, Debtors were already bound by the final confirmation order to turn over the tax refunds as part of their plan payments. *Great Lakes Higher Ed. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir.1999). *See also Freeman v. Schulman (In re Freeman)*, 86 F.3d 478,

481 (6th Cir.1996) (where debtor's plan provided that all tax refunds should go to the plan and made no argument that the funds were exempt, the income qualified as "projected disposable income"); *In re Cochran*, 141 B.R. 270, 272 (M.D.Ga.1992) (debtor's plan contained a provision providing for the turnover of tax refunds and court held that the United States was required to comply with the plan and pay over the refund to the Trustee).[9]

Therefore, the bankruptcy court correctly held that Trustee's motion was timely filed, pursuant to § 1329(a), because the plan payments had not been completed at the time the motion was filed due to Debtors' failure to remit the 1998 tax refund.

### C. Proposed Modified Plan Lacked Plan Elements and Exceeded Maximum 60–Month Duration— §§ 1322(a), 1329(c)

█ A modified plan is essentially a new plan. *See Powers v. Savage (In re Powers)*, 202 B.R. 618, 623 (9th Cir. BAP 1996). Section 1329(b)(1) provides that the modified plan must meet some of the same criteria for the originally filed plan:

> Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C. § 1329(b)(1).

Debtors contend that Trustee's motion to modify failed to comply with the Code because Trustee did not propose a new payment schedule, nor did Trustee file a proposed plan that contained each of the requirements for a chapter 13 plan, which are set forth in § 1322(a).

Section 1322(a) provides:

---

**9.** Although it would not have mattered if Debtors had claimed the tax refund as exempt property, *see Burgie*, 239 B.R. at 409 (debtor may voluntarily use exempt property to make payments to creditors), they did not do so in this case.

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

11 U.S.C. § 1322(a).

The legislative history makes clear that these are "mandatory plan provisions." S.Rep. No. 95–989, 95th Cong., 2d Sess. 141, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5927; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 429, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6384. *See also Chrysler Fin. Corp. v. Nolan (In re Nolan),* 232 F.3d 528, 532 (6th Cir.2000); *In re Harvey,* 213 F.3d 318, 322–23 (7th Cir.2000); *Foster v. Heitkamp (In re Foster),* 670 F.2d 478, 483–84 (5th Cir.1982); *Fernandez v. GE Capital Mortgage Servs., Inc. (In re Fernandez),* 227 B.R. 174, 178 (9th Cir. BAP 1998), *aff'd mem.,* 208 F.3d 220, 2000 WL 152769 (9th Cir.2000) (stating that plan which did not provide for the submission of debtor's income to the trustee was "deficient"); *Maloney v. Metro. Mortgage Corp. (In re Maloney),* 25 B.R. 334, 336 (1st Cir. BAP 1982).

Trustee's motion merely indirectly asked for a modification by way of an "order requiring the Debtors to pay the allowed unsecured claims the value of the non-exempt [Proceeds]." (Motion to Modify, December 13, 2000, at 2.) There was no modified plan form or specific provisions as to how this was to occur.

The full implications of these deficiencies, when combined with the plan length requirement of § 1329(c), were fatal to modified plan confirmation. Section 1329(c), like its counterpart § 1322(d), prohibits a modified plan from exceeding five years, or 60 months, in duration.[10]

■ The 60–month plan period of Debtors' plan had already expired when the October 9, 2001, modification order was entered. We have held that the 60–month period under § 1322(d) or § 1329(c) commences on the date the first plan payment was due pursuant to § 1326(a)(1), which provides that plan payments shall commence "within 30 days after the plan is filed." 11 U.S.C. § 1326(a)(1). *See Nicholes v. Johnny Appleseed of Wash. (In re Nicholes),* 184 B.R. 82, 87 & n. 5 (9th Cir. BAP 1995); *see also In re Collier,* 193 B.R. 1, 3–4 (Bankr.D.Ariz.1996) (holding that 60–month period under § 1322(d) begins to run from the date the debtor is first obligated to make payments, *viz.,* § 1326(a)(1), providing that the plan payments shall commence within 30 days after the plan is filed, and citing *Nicholes* ). *But see In re Serna,* 193 B.R. 537, 539 (Bankr.D.Ariz.1996) (60–month period begins to run from the first payment due after plan confirmation, following *United Cal. Sav. Bank v. Martin (In re Martin),* 156 B.R. 47, 50 (9th Cir. BAP 1993)). *But see In re Gurr,* 194 B.R. 474, 476–77 (Bankr.D.Ariz.1996) (stating that *Martin's*

---

10. Section 1329(c) provides:

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329(c).

holding regarding the confirmation method of calculation was merely *dicta* ).

Following *Nicholes*, the plan length began 30 days after May 16, 1996, or mid-June, 1996, and thus ended in June 2001. The order modifying the plan was not entered until October, 2001. Furthermore, the order did not specify how Trustee would obtain the Proceeds or their value from Debtors for distribution to the unsecured creditors. At the February 28, 2001 hearing, Trustee informed the court that about $70,000 more was needed to pay the unsecured claims in full, and orally proposed that this amount would be paid in four monthly cash payments of $15,000. However, no written payment schedule was presented, nor was any implementation detail provided.

Moreover, Trustee's oral proposal would have extended the plan beyond 60 months—to October 2001, presuming that the 60–month period ended in June 2001. Trustee erroneously considered that the five-year plan would end in October 2001— five years from the date the first plan payment was due *after plan confirmation*. (Transcript, February 28, 2001, at 22:19– 22.) Assuming, *arguendo*, that *Martin*

and *Serna* are still good law, the plan would have terminated in late October, 2001, and there still would not have been enough time for full payment by that date.

Although the record indicates that the bankruptcy court ruled that the modified plan could not exceed 60 months, it then abandoned its analysis of that issue. The court did not require Trustee to present a written payment schedule, nor did it explain in its order how the modified plan would comply with § 1329(c). Moreover, the court's order was conditional, pending resolution of the exemption matter.

It is clear from the transcripts and excerpts of record that Trustee had no idea how the money would be forthcoming. The Proceeds were tied up in the North Carolina property, and the exemption claim as to that property was still unresolved.

Therefore, the payment required under the modified plan could not be completed, either by June, 2001, or even by October, 2001, short of some stay or tolling mechanism.[11] Because the modified plan exceeded the 60–month limit, the bankruptcy court therefore abused its discretion in granting the modification.[12]

---

11. Like § 1322(d), § 1329(c) does not expressly contain a drop-dead date after which the case must be dismissed if payments extend beyond the 60 months. There is case authority for accepting a "cure" of plan payments within a reasonable time after the plan term has expired, in order to prevent the dismissal of the case. *See* 8 *Collier on Bankruptcy, supra,* ¶ 1322.17[2] at 1322–55 (Section 1322(d) focuses on the payment provided for by the plan, and if the debtor is substantially complying with the plan, the court should allow the plan to be completed within a reasonable period of time); *In re Black,* 78 B.R. 840, 842 (Bankr.S.D.Ohio 1987) (§ 1322 has no provision for dismissal). Such circumstances are factually distinguishable from our case, however, which involved the *confirmation* of a modified plan to include a postpetition asset, payment of which would neces-

sarily extend the plan beyond 60 months. Section 1322(d) expressly prohibits a court from confirming a plan that provides for payments over a period longer than five years.

12. Even if the filing of the motion to modify somehow tolled the running of the plan term, a proposition for which we find no authority, this modified plan would not be confirmable because it was not feasible. Section 1325(a)(6) requires the court to find that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). As discussed above, both Trustee's modification and the conditional confirmation order lacked any manner of paying over the Proceeds. It was likely that Debtors would first have to sell the North Carolina property. Indeed, such payments

## D. Debtors Are Entitled to Discharge; Remaining Issues are Moot

Trustee contends that a timely motion to modify was made because Debtors received a postpetition asset which changed the liquidation analysis, such that the Proceeds were required to be distributed to the unsecured creditors.[13]

However, Trustee did not move to dismiss Debtors' chapter 13 case on the grounds that they did not turn over the Proceeds for distribution. Instead, Trustee unconditionally accepted the lump sum payment and the 1998 tax refund in completion of the plan payments without any reservation concerning the outcome of the motion to modify.

We have already held that Trustee's motion to modify must not only be filed in a timely manner, but it must also satisfy the requirements for a plan under §§ 1329, 1322 and 1325. In this case it did not. Debtors completed their chapter 13 payments, and thus they are entitled to a discharge under § 1328(a). In the absence of a confirmable modified plan, the remaining issues (Nos. 4 and 5) are rendered moot.

## CONCLUSION

Based on the foregoing analysis, we **REVERSE** the bankruptcy court's order conditionally confirming the modified plan, and direct the bankruptcy court to enter Debtors' discharge.

could not be authorized because the 60-month plan term had already expired.

**13.** We address Trustee's policy argument only to the extent that this case did not involve a postpetition disposable income asset, but rather a non-income producing asset. Even if the Proceeds were property of the estate and subject to disclosure, they were not distributable to creditors. *Burgie,* 239 B.R. at 410 (holding that only "disposable income" is used to fund a chapter 13 plan); 8 *Collier on Bankruptcy, supra,* ¶ 1306.03, at 1306–6.

Then, assuming that the "best interests of creditors" test is recalculated at the time of plan modification, Debtors' net disposable income would not have increased, the unsecured creditors would receive more from liquidation, and, thus, the modified plan was still unconfirmable.