**In re Wade Reed HALL and Teri Lyn Hall, Debtors.**

**No. 09–40700–JDP.**

United States Bankruptcy Court,
D. Idaho.

Aug. 31, 2010.

---

Stephen A. Meikle, Advantage Legal Services, Idaho Falls, ID, for Debtors.

Charles Murphy, Boise, ID, for Chapter 13 Trustee Kathleen McCallister.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### Introduction

After confirmation of Reed and Teri Hall's ("Debtors") chapter 13 plan,[1] and after approximately nine months of payments on that plan, Teri Hall was awarded Social Security Disability Income ("SSDI") benefits consisting of a lump sum of $44,377.50,[2] together with future payments of $1,133.00 per month[3] for an indefinite period. Docket Nos. 44, 52. In light of

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

2. $31,877.50 of the lump sum amount was granted to Teri Hall on her behalf. Mrs. Hall has two children from a prior marriage and was granted $6,250 in a lump sum award for each of those children. Together, the lump sum payments totaled $44,377.

3. The monthly payment award includes $783 per month on Teri Hall's behalf and $175 per month on behalf of each of Mrs. Hall's children. Combined, the monthly payment equals $1,133.

this development, chapter 13 trustee Kathleen A. McCallister ("Trustee"), moved to modify Debtors' confirmed plan to capture all, or a portion of, the SSDI award for distribution to Debtors' creditors. Docket No. 48. Debtors objected to Trustee's motion. Docket No. 51.

The Court conducted a hearing concerning Trustee's motion on July 13, 2010, and took the issues under advisement. The Court has considered the record and submissions of the parties, the arguments of counsel, as well as the applicable law. This Memorandum constitutes the Court's findings of fact and conclusions of law, and resolves this contest. Fed. R. Bankr.P. 7052, 9014.

## Facts

Debtors filed a chapter 13 petition on May 13, 2009. Docket No. 1. Two days later, Debtors proposed a chapter 13 plan whereby $245 per month would be paid to Trustee for a term not exceeding 60 months. Docket No. 10. Trustee recommended that the plan not be confirmed until certain schedules were updated, including: Schedule I, to reflect a higher net income for Reed Hall; Schedule J; and Schedule B. Docket No. 24. Schedule I was amended by Debtors to reflect a net income of $3,756 for Mr. Hall, an increase in $890.19 over Mr. Hall's income shown at filing. Docket Nos. 1, 27. At the same time, Teri Hall's net income was reduced by $148.65, to $375.73, and the combined income for the Debtors was listed as $5,780.07.[4] Docket No. 27. An amendment to Schedule J indicated that Debtors, adjusting for the updated Schedule I income and monthly expenses, had a monthly net income of $308.38. *Id.* Debtors updated Schedule B to include Teri Hall's

pending, contingent SSDI claim, for an "unknown" amount. Docket No. 26.

Debtors' chapter 13 plan was eventually confirmed on October 13, 2009. Docket No. 33. The confirmed plan requires that Debtors pay $359 per month to Trustee, and directs Debtors to immediately notify Trustee, and to amend all appropriate schedules, upon resolution of Teri Hall's SSDI claim. *Id.* Approximately six months after plan confirmation, the SSDI claim was resolved. Debtors received $44,377.50 in lump sum awards: a $31,877.50 lump sum award to Teri Hall, and two $6,250 lump sum awards, one for each of Mrs. Hall's children. Docket No. 44. Under the SSDI award, Teri Hall also began receiving monthly SSDI payments of $783 for herself and $175 for each of her two children, for a total of $1,133 per month. Docket No. 48. Schedule C was concomitantly updated, claiming the entire SSDI award as exempt. Docket No. 44.

Trustee moved to modify Debtors' confirmed plan on May 17, 2010. Docket No. 48. She asserted that both the lump sum awards and the $1,133 in monthly benefits should be paid to Trustee to distribute through the plan. *Id.* Debtors objected to Trustee's motion, and also submitted further amended Schedules I and J. Docket Nos. 51, 53. While the amended Schedule I no longer includes Teri Hall's employment income, it includes the $1,133 monthly SSDI award. *Id.* Debtors' amended Schedule I combined average monthly income is $6,537.34, an increase of $757.27 over the amount on the pre-confirmation Schedule I. *See id.* Their amended Schedule J indicates average monthly expenses of $6,227.69, an increase of $756 over the amount on the pre-confirmation Schedule J.[5] *See id.* Therefore, the resulting Sched-

---

**4.** The combined income on Schedule I reflected the net income of each spouse as well

as domestic maintenance payments and a budgeted income tax refund.

**5.** The increases on the amended Schedule J

ule J monthly net income is $309.65, only $1.27 more per month than shown on the pre-confirmation Schedule J. *See id.*

Since receipt of the $44,377.50 in lump sum awards, Debtors have, without Trustee's consent, spent all but approximately $15,000 of those funds.[6] Docket No. 60. Debtor Teri Hall testified at the hearing for this motion that all expenditures from the award were to pay post-confirmation debts, and that Debtors "kept track of" where the lump sum monies went. Transcript of Hearing on Trustee's Motion to Modify Plan at 42:12, 44:50 (Jul. 13, 2010). Trustee concedes that it is likely impractical to recover the spent lump sum amounts. *Id.* at 54:45.

## Discussion

 As the moving party, Trustee bears the burden of showing sufficient facts to indicate that modification is warranted. *See* § 1329(a). One of the statutory reasons for which a plan may be modified is to increase the amount of payments under the plan. § 1329(a)(1). In this case, Trustee has demonstrated that Debtors received $44,377.50 in post-confirmation lump sum monies, and will receive $1,133 each month going forward. Neither the lump sum awards nor the monthly awards were considered at plan confirmation. Docket No. 33. Trustee has, therefore, met her burden of coming forward with adequate evidence that a modification

of Debtors' plan to increase payments may be appropriate.

Debtors, however, argue that the confirmed plan should not be modified for three reasons. *See* Docket No. 59. First, Debtors contend that, because there is only a difference of $1.27 in the monthly net income between the pre-confirmation Schedule J amount and the post-SSDI-award Schedule J amount, there has not been a substantial change in Debtors' ability to repay their creditors, and no modification should be ordered. *See id.* Debtors' argument assumes, of course, that a change in their ability to pay is a prerequisite for modification. *Id.* Second, Debtors assert that because the SSDI award is properly claimed exempt property, it should not be included as disposable income available to creditors. *Id.* Finally, Debtors argue that SSDI awards in particular, as benefits received under the Social Security Act, must be excluded from disposable income paid to creditors. *Id.* Debtors' latter two arguments are based on their assumption that the "disposable income" analysis under § 1325(b) used to measure confirmation of their original plan is also applicable to determining whether an SSDI award may be captured via a § 1329 modification.

Below, the Court addresses Debtors' "change-in-ability-to-pay" contention and the standards for § 1329 modifications in turn.

---

include $740 for additional medical and dental expenses and $236 for private school expenses. A reduction in $220 for child care expenses was also included.

6. After the motion hearing, Debtors filed an "Affidavit of Debtor Clarifying Testimony," on July 19, 2010. In it, Teri Hall avers that the $15,000 includes the $12,500 lump sum amounts for her children and only $2,500 of her primary award. Mrs. Hall's testimony at the July 13, 2010, hearing on this motion was that there was "approximately $15,000" of

the primary $31,877.50 award remaining. Transcript of Hearing on Trustee's Motion to Modify Plan at 45:50 (Jul. 13, 2010). It is, of course, inappropriate to attempt to amend or "clarify" in-court witness testimony via a post-hearing affidavit, or by any other method that does not afford opposing parties an opportunity for cross-examination. The affidavit need not be stricken in this case, though, since the Court's analysis, below, does not depend on the actual amount of lump sum monies remaining.

## I.

Where Code's language is plain, bankruptcy courts should, absent an absurd result, enforce the terms of the statute. *Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). Section 1329 provides: "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim." § 1329(a). Contrary to Debtors' position, a post-confirmation change in a chapter 13 debtor's ability to pay payments under a confirmed plan is not, per the plain language of the Code, a prerequisite under § 1329 for a plan modification. *Powers v. Savage (In re Powers),* 202 B.R. 618, 621–22 (9th Cir. BAP 1996). As long as a request for modification satisfies the requirements of § 1329, the modification should be approved, even in the absence of a change in the debtor's ability to pay. *Id.* at 622; *McDonald v. Burgie (In re Burgie),* 239 B.R. 406, 409 (9th Cir. BAP 1999).

## II.

Another issue in this case is whether the disposable income requirements for confirmation under § 1325(b) should be applied by the Court to a proposed modified plan under § 1329. If, as Debtors assert, § 1325(b) is incorporated into the plan modification requirements of § 1329, the Code's definition of "current monthly income" applies to determine Debtors' required plan payments. § 1325(b)(2). Because the definition of "current monthly income" in § 101(10A)(B) excludes "benefits received under the Social Security Act," Debtors argue that such benefits should not be subject to capture through Trustee's proposed § 1329 modification.

Courts have differed over the answer to this question. *See Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 779–81 (9th Cir. BAP 2005) (providing an overview of courts and cases that have examined the interplay between § 1325(b) and § 1329). Of course, the resolution of this issue begins with the statutory language of §§ 1329 and 1325(b). Section 1329 sets forth the standards for chapter 13 plan modifications. It provides in relevant part that:

**Modification of plan after confirmation**

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

\* \* \*

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

§ 1329(a), (b).

As can be seen, various other provisions of chapter 13 (*i.e.,* §§ 1322(a), 1322(b), 1323(c), and 1325(a)) are expressly referenced in § 1329(b)(1), and are thereby effectively incorporated as plan modification requirements. While § 1325(b) is not expressly listed in § 1329(b)(1), because § 1325(a) is referenced and begins: "[e]xcept as provided in subsection (b), the court shall confirm a plan if [certain conditions are met]," some courts have decided

760

that the requirements of § 1325(b) should also apply to plan modifications. *See, e.g., In re Sounakhene*, 249 B.R. 801, 805 (Bankr.S.D.Cal.2000) (recognizing competing views regarding the incorporation of § 1325(b)).

Many other courts, however, including most courts considering the issue in the Ninth Circuit, have preferred a plain meaning and language analysis of the interplay of §§ 1325(b) and 1329. *See In re Sunahara*, 326 B.R. at 774–75.[7] It is their view that, since § 1329 does not expressly reference § 1325(b), courts may not imply that the § 1325(b) rules for determining "disposable income" apply in judging the propriety of post-confirmation modifications. *Id.* at 781.

The omission of § 1325(b) in § 1329(b)(1) has been also highlighted in decisions from other circuits as well. *Id.* at 775–79.

The Court concludes the plain language of the Code dictates the outcome of this issue. Section 1322(b) begins: "[s]ubject to subsections (a) and (c) of this section, the plan may ...." § 1322(b). If incorporation-by-reference reasoning is valid, there would be no purpose for § 1329's reference to § 1322(a). According to Debtors, § 1325(a)'s reference to § 1325(b) supposedly manifests Congress' intent to incorporate § 1325(b) into § 1329. But following that reasoning, § 1322(b)'s reference to § 1322(a) should be sufficient to have a similar effect.[8] Likewise, § 1322(a) includes the language: "notwithstanding any other provision of this section, a plan may ...." § 1322(a)(4). The reference to "other provision[s] of this section" is arguably, per incorporation-by-reference reasoning, sufficient to demonstrate Congress' intent that all subsections of § 1322, including § 1322(b), be read into § 1329 modifications. And yet, Congress specifically included both §§ 1322(a) and 1322(b) in § 1329's referencing of applicable Code sections, while failing to include reference to § 1325(b). § 1329(b)(1).

■ After considering these decisions, this Court concludes that, because the

---

7. The tenor of Ninth Circuit courts' decisions has evolved over time. In the past, some decisions found § 1325(b) implicitly incorporated into § 1329. *See, e.g., In re McKinney*, 191 B.R. 866 (Bankr.D.Or.1996). Others recognized that, while not expressly incorporated, the requirements of § 1325(b) might apply to § 1329 in some circumstances. *See, e.g., In re Burgie*, 239 B.R. at 409 (finding § 1325(b) applied where the bankruptcy court assumed trustee objected to plan confirmation); *In re DeFrehn*, 03.3 I.B.C.R. 174, 176, 2003 WL 25273838 (Bankr.D.Idaho 2003) (finding § 1325(b) applies only if trustee or unsecured creditor objects to plan); *see also In re Sounakhene*, 249 B.R. at 805 (finding § 1325(b)'s underlying analysis might influence courts' discretion in modification cases). Just before the 2005 Bankruptcy Code amendments, the BAP plainly held that § 1325(b) does not apply to § 1329 modifications. *In re Sunahara*, 326 B.R. at 781. In an apparent modern trend, the majority of recent cases within the Ninth Circuit have concluded that, because Congress failed to use the 2005 amendments to incorporate § 1325(b) into § 1329, *Sunahara* should be followed, and the § 1325(b) requirements do not apply to § 1329 modifications. *See, e.g., Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 543 (9th Cir. BAP 2007); *Pak v. eCast Settlement Corp. (In re Pak)*, 378 B.R. 257, 272 (9th Cir.BAP2007); *In re Ewers*, 366 B.R. 139, 143 (Bankr.D.Nev.2007). *See also In re Westing*, 2010 WL 2774829, at *3 n. 8 (Bankr.D.Idaho 2010) (discussing that, while *Sunahara* does not incorporate § 1325(b) into § 1329, the debtor's proposal must satisfy § 1325(a)(3)'s "good faith" requirement, whereby the court may consider debtor's current income and expenses).

8. Note the similarity between the language of § 1325(a) and § 1322(b). "Except as provided in subsection (b), the court shall confirm a plan if...." § 1325(a). "Subject to subsections (a) and (c) of this section, the plan may ...." § 1322(b).

plain language of § 1329 does not include any reference to § 1325(b), even though § 1329 includes specific reference to several other Code sections, the requirements of § 1325(b) should not be applicable to § 1329 modifications. *See In re Sunahara*, 326 B.R. at 781. Congress did not express its intent that the provisions of § 1325(b) apply to modifications when § 1329 was first adopted. *See* H.R.Rep. No. 95–595, at 431, 1978 U.S.C.C.A.N. 5963, 6386–87 (1977). Moreover, § 1329 was not amended to include the provisions of § 1325(b) when the "disposable income" test was significantly amended by Congress in 1984. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333. When the Bankruptcy Code was significantly amended in 2005, and though there was a considerable existing division in the case law on this issue, § 1329, while amended in other ways, was not changed by Congress to include any reference to § 1325(b). Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, § 102,119 Stat. 23, 34–35 (codified as amended at 11 U.S.C. § 1329). If Congress' omission of § 1325(b) throughout the years has been an oversight, and it, instead, intended that the disposable income and other requirements of § 1325(b) apply to plan modifications, Congress, and not the courts, must clarify its intent. *In re Sunahara*, 326 B.R. at 781.

### III.

The standards for chapter 13 modifications are contained in the language of § 1329, and whether a modification should be approved is subject to the bankruptcy judge's discretion and good judgment in reviewing the motion to modify. *See In re Powers*, 202 B.R. at 622.

Modification analysis under § 1329 is an equitable one. *Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 438 (9th Cir. BAP 1997). By reference to § 1325(a), § 1329 incorporates the good faith requirement of § 1325(a)(3), which requires an analysis of whether a plan proponent took into account all militating factors and considered the totality of circumstances. *See Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 543 (9th Cir. BAP 2007) (quoting *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386,1390–91 (9th Cir. 1982)). A debtor's income and expenses may be considered when evaluating the totality of circumstances under the good faith modification analysis. *In re Westing*, 2010 WL 2774829, at *3 n. 8 (Bankr.D.Idaho 2010).

Trustee contends that, considering Debtors' receipt of SSDI benefits, their plan should be modified to require payments of $1,492 per month. Docket No. 48. Such a payment would include the $359 per month paid under the current plan plus the entire $1,133 monthly SSDI award received by Debtors. *Id.* Trustee's request, however, does not recognize that, at the time of confirmation of Debtors' plan, Teri Hall was earning $375.73 per month from her employment. Docket No. 27. Per Debtors' most recent Schedule I, Teri Hall, due to her disability, is no longer employed. Docket No. 52.

Social security disability payments are intended to supplement or replace lost income. *In re DeFrehn*, 03.3 I.B.C.R. 174, 176, 2003 WL 25273838 (Bankr.D.Idaho 2003). Requiring Debtors to pay $359 per month as provided under the confirmed plan, which was based in part on Teri Hall's employment income, while also capturing the entire amount of Debtors' income-substitute SSDI award would be unrealistic and inequitable.

At the same time, allowing Debtors to accrue income, rather than to apply that income to their plan payments, would

constitute a windfall, which is a likewise inequitable result. Social security disability payments, while serving as an income substitute, are intended to provide for a claimant's basic needs. *In re DeFrehn*, 03.3 I.B.C.R. at 176, 2003 WL 25273838. Those benefits are not subject to distribution to creditors by a trustee in a liquidation case. 42 U.S.C. § 407. *Crawford v. Gould*, 56 F.3d 1162,1166 (9th Cir.1995) (finding that § 407 is designed to protect Social Security benefits from the reach of creditors). Such a limitation, however, does not prevent debtors from applying an SSDI award to current expenditures, such as food, shelter, transportation, and other necessities. *See Hagel v. Drummond (In re Hagel )*,184 B.R. 793, 798 (9th Cir. BAP 1995); *In re DeFrehn*, 03.3 I.B.C.R. at 176, 2003 WL 25273838.

Application of SSDI benefits to a debtor's basic needs will offset non-SSDI income that is currently being used for such purposes. This excess non-SSDI income should then be distributed to creditors and, considering the totality of the circumstances in this case, would provide a more equitable outcome than if such income were shielded from a trustee through application to current expenditures while SSDI income was held beyond the creditors' reach. In other words, based upon the record, the Court finds that Debtors' SSDI awards should be applied to payment of their current expenditures, and any excess in Debtors' non-SSDI income should be devoted to plan payments.

■■■ The evidence shows that Debtors' necessary living expenses have increased since plan confirmation, shadowing increases in Debtors' income. The most recent, post-SSDI-award calculations indicate that Debtors, even if dedicating all monthly SSDI awards to their necessary expenditures, would only have an additional $1.27 per month in non-SSDI income

available to creditors beyond their present, confirmed plan payment. Practically all non-SSDI income that has been freed by the receipt of the SSDI awards has been consumed by an increase in Debtors' expenditures. The Court, in the exercise of its discretion, will not require modification of Debtors' plan to capture $1.27 more per month.

■■■ However, in addition to the monthly benefits, Debtors also received lump sum payments totaling $44,377.50, approximately $15,000 of which remains. The primary factor in determining whether to include a lump sum payment in a chapter 13 modification is not the payment's lump sum nature, but rather the payment's purpose. *Profit v. Savage (In re Profit)*, 283 B.R. 567, 574 (9th Cir. BAP 2002); *In re Burgie*, 239 B.R. at 411; *In re DeFrehn*, 03.3 I.B.C.R. at 176, 2003 WL 25273838. If a payment was intended to be income, or, more precisely, an income-substitute, as opposed to payment of a single asset, the payment may be included in a modified plan. *See In re Burgie*, 239 B.R. at 411. SSDI payments, which are intended to supplement or replace income lost due to a physical or mental impairment, qualify as income or income-substitutes. *In re DeFrehn*, 03.3 I.B.C.R. at 176, 2003 WL 25273838. Dependent SSDI benefits are intended, also as income-substitutes, to provide for disabled wage earners' dependents. *See Jimenez v. Weinberger*, 417 U.S. 628, 634, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). In fairness to their creditors, this Court should consider all sources of Debtors' income, including those of dependents residing in the household, to evaluate the propriety of a proposed modification to their confirmed plan. Debtors' dependent SSDI benefits are, therefore, appropriate for inclusion in the chapter 13 modification calculation.

Debtors and two of their dependents, all of whom are members of Debtors' household, received lump sum SSDI benefits on account of Teri Hall's disability. While $44,377.50 in lump sum payments were awarded, only approximately $15,000 remains in Debtors' household. The other approximately $29,377.50 was spent by Debtors, reportedly to pay post-confirmation debts.

As a practical matter, Debtors' expenditure of funds from the lump sum awards without notice to, or permission of, Trustee placed those funds beyond Trustee's reach. That conduct may constitute "cause" for dismissal of Debtors' chapter 13 case under § 1307(c), but Trustee has not requested that relief. Trustee's motion suggests that the Court ought to modify the confirmed plan to recapture these expenditures in the form of future payments, but that approach is unworkable and, frankly, naive. That Debtors spent these funds is not evidence that they can pay a concomitant amount to creditors through a modified plan going forward.

However, taking into consideration the totality of the circumstances, the Court finds it equitable to require that Debtors include the entire remaining amount of any SSDI lump sum payments in a plan modification. Debtors are ordered to cooperate with Trustee in fixing the exact amount of the lump sum awards remaining, and Trustee's motion to modify will be granted to the extent that Debtors will be required to immediately pay over those funds to Trustee for distribution to creditors under their chapter 13 plan.

### Conclusion

Trustee's motion to modify the plan will be granted in part. While Debtors' monthly payment amount will not be changed, any funds remaining from any of the lump sum SSDI payments must be turned over to Trustee for distribution un-

der the plan. Counsel for Debtors and Trustee shall cooperate in the prompt submission of an order consistent with this decision.