NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   SC-11-1240-KiMkH |
| ) | |
| DEVON LYNN MORRIS and ) | Bk. No.   09-06014-PB |
| RACHEL MARIE MORRIS, ) | |
| ) | |
| Debtors. ) | |
| ———————————————————) | |
| ) | |
| DAVID L. SKELTON, Chapter 13 ) | |
| Trustee, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| DEVON LYNN MORRIS; ) | |
| RACHEL MARIE MORRIS, ) | |
| ) | |
| Appellees. ) | |
| ———————————————————) | |

Argued and Submitted on October 20, 2011
at San Diego, California

Filed - December 23, 2011

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Margaret M. Mann, Bankruptcy Judge, Presiding

---

Appearances:   Rebecca E. Pennington, Esq. argued for appellant, David L. Skelton, Chapter 13 Trustee; Nikhil Chawla, Esq. of the New Chapter Law Group argued for appellees, Devon and Rachel Morris.

---

Before: KIRSCHER, MARKELL, and HOLLOWELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, chapter 13[2] trustee David L. Skelton ("Trustee"), appeals an order from the bankruptcy court granting in part and denying in part his motion to modify debtors' plan under § 1329(a)(the "Modification Order"). We VACATE the Modification Order and REMAND with instructions that the bankruptcy court consider the intervening case law of <u>Ransom</u>, <u>Martinez</u>, and <u>Smith</u>, and that it make proper findings for the modified plan under FRCP 52(a), incorporated by Rule 7052.[3]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellees, debtors Devon and Rachel Morris ("Mr. Morris" individually or collectively "Debtors"), filed their chapter 13 petition for relief on April 30, 2009. Debtors' income is derived entirely from Mr. Morris's employment at Microsoft. On their Form B22 ("B22"), Debtors reported a current monthly income of $12,027 with a monthly disposable income of $265.27. In their Schedule I, Debtors reported a monthly income of $10,550. Debtors' chapter 13 plan proposed a payment of $1,200/month and proposed a 5% dividend to unsecured creditors.

At the § 341 creditor's meeting on June 12, 2009, Trustee

---

[2] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "FRCP."

[3] Debtors filed a request for leave to file a sur-reply to Trustee's reply brief on appeal. The Panel issued an order stating that we would take this matter under advisement until we considered the merits of the appeal. Although the leave request is justified considering that Trustee's reply brief is essentially a motion to strike portions of Debtors' response brief, we need not grant leave for the sur-reply due to our decision to vacate the Modification Order and remand the matter to the bankruptcy court.

informed Debtors that he had Mr. Morris's pay stubs from the months of January through March 2009, but that he was missing certain pay stubs from October and December 2008, which he needed to calculate Debtors' six month income prior to the bankruptcy filing. Trustee also questioned Mr. Morris about the discrepancy between the income listed at $12,027 in the B22 and the income reported in their Schedule I at $10,550. Mr. Morris replied that he had received a rare bonus (the "Gold Star Bonus") in December which skewed the numbers, and that he had received a Gold Star Bonus on only two occasions during his seven years at Microsoft. Trustee replied that he needed a copy of Mr. Morris's December 2008 pay stub to confirm the amount of the Gold Star Bonus.

On June 15, 2009, Trustee objected to confirmation of Debtors' chapter 13 plan, contending that Debtors had failed to apply all projected disposable income to the plan and specifically noting the discrepancies in Debtors' monthly income between Schedule I of $10,550, B22 of $12,027, and their 2008 tax return average of $15,936. Trustee's objection also stated:

> Deleting rejected property and lien stripped property, debtors would be required to pay $118,000 per B22. Debtor understating income and will have up to $5000/mo additional disposable income in addition to $1055/mo in addition to 401K contributions.

The parties eventually resolved Trustee's objections and on October 14, 2009, Debtors filed a Pre-Confirmation Modification to Chapter 13 Plan executed on September 28, 2009 ("PCM"), which increased the monthly payments to $1,350/month and increased the dividend to unsecured creditors to 10% or $41,439. Under the PCM, Debtors were to provide Trustee with their annual tax returns and turn over tax refunds, if any, for the duration of the plan. The

PCM was confirmed by the Hon. Peter Bowie on November 25, 2009 (the "Confirmation Order").[4] Debtors forwarded a copy of their 2009 federal income tax return to Trustee on or about April 22, 2010.

On November 8, 2010, Trustee moved to modify Debtors' plan to increase their monthly plan payments from $1,350 to $4,200, and to increase the dividend to unsecured creditors from 10% to 30% (from $41,439 to $168,000). Trustee's sole argument was that Debtors' 2009 tax return showed a monthly income of $5,000 more than previously represented, and thus the material change in Debtors' circumstances warranted modification. Debtors' 2009 income was $174,629 ($174,629 / 12 = $14,552/month).

Debtors opposed Trustee's motion, contending that the income issue raised by Trustee had already been raised and resolved in the PCM. Debtors alternatively argued that Trustee's motion failed to show any substantial and unanticipated change in Debtors' circumstances, and thus it was barred by res judicata;[5] Debtors' 2009 tax return reported wages of $174,629, while their 2008 tax return reported wages of $172,125 - an increase of only $2,504, or 1.45%.

Trustee asserted in his reply that Debtors had indicated a

---

[4] Sometime after entry of the Confirmation Order, the case was transferred to the Hon. Margaret M. Mann.

[5] Although the parties to this appeal used the term "res judicata" throughout the case before the bankruptcy court and in this appeal, we now generally use the term "claim preclusion." Paine v. Griffin (In re Paine), 283 B.R. 33, 38 (9th Cir. BAP 2002). However, we will use the term "res judicata" here given the arguments before the bankruptcy court and its use of that term.

-4-

reduction in income (the March 31, 2009 pay stub showed $31,650 year-to-date income which equates to $10,550/month, but the 2009 tax return showed that Debtors' income had not been reduced) yet their actual income was $5,000/month higher than alleged. Therefore, argued Trustee, Debtors either misrepresented that Schedule I income was insufficient to fund the plan Trustee would have required based on the B22 figures, or a significant change in Debtors' income had occurred. Trustee further contended that Debtors' monthly expenses of $1,669.75/month for a stripped lien and two surrendered vehicles were now available for unsecured creditors per the decisions of Yarnell v. Martinez (In re Martinez), 418 B.R. 347 (9th Cir. BAP 2009), and Am. Express Bank, FSB v. Smith (In re Smith), 418 B.R. 359 (9th Cir. BAP 2009).

The bankruptcy court held a hearing on Trustee's motion on January 4, 2011. Trustee asserted that before confirmation he had relied on Mr. Morris's representation that the 2008 tax return did not accurately reflect their current income, and that it was actually lower as reported in their Schedule I and B22. However, when the 2009 tax return showed that Debtors' average income was approximately the same as in 2008, Trustee discovered that Debtors' income had never been reduced as represented. Therefore, argued Trustee, Debtors' positive change in income of about $5,000/month warranted modification of the plan. Debtors denied ever representing or indicating that their income would decrease from 2008 to 2009. With factual issues in dispute, the bankruptcy court ordered an evidentiary hearing on the matter for March 7, 2011. The court also ordered the parties to file supplemental briefing addressing whether res judicata applied seeing that the

-5-

2008 tax return was available at confirmation, and thus any alleged misrepresentations by Debtors might be of no consequence.

In his supplemental brief, Trustee contended that the statutory framework of § 1329(a) allowed for an upward adjustment in Debtors' monthly plan payments, and therefore his request to modify the plan was not barred by res judicata. He further argued that under Ransom v. FIA Card Servs., N.S., 131 S.Ct. 716 (2011), Debtors were required to devote their full disposable income, which was approximately $5,000/month more than scheduled, to fund Trustee's proposed modified plan.

Debtors contended in their supplemental brief that Trustee was seeking to relitigate the same claims he had already raised and resolved with Debtors in the PCM; he offered no evidence of how Debtors' circumstances had changed from all that was known or knowable to Trustee prior to confirmation. Debtors further contended that Trustee had never inquired about the Gold Star Bonus or any other possible bonuses Mr. Morris might receive, and Trustee should have raised the issue of bonus income at confirmation. Therefore, argued Debtors, Trustee's claims were barred by res judicata. Alternatively, Debtors contended that Trustee's motion failed because he had not demonstrated both a substantial and unanticipated change in Debtors' ability to pay since no change existed between the 2008 and 2009 tax returns. Debtors also rejected Trustee's use of Martinez to support modification. They argued that Martinez had been decided prior to the Confirmation Order, so Trustee was barred from raising it now. Attached to Debtors' supplemental brief were all of Mr. Morris's pay stubs reflecting his wages and all bonuses received from

-6-

October through December 2008, as well as his 2008 W-2. An attached email showed that Debtors' counsel sent the pay stubs and W-2 to Trustee's counsel on September 25, 2009, prior to the PCM.

The evidentiary hearing on Trustee's motion proceeded on March 7, 2011. On direct examination, Mr. Morris confirmed that Debtors were no longer paying Ditech for the second mortgage on their home, or paying for an ATV and trailer. Trustee made an offer of proof that adding back in all of those expenses (along with the disposable income of $265.27) would result in a plan providing $118,624 to unsecured creditors, as opposed to the $41,000 Debtors were currently paying. Mr. Morris then testified that the income discrepancy between Debtors' Schedule I and B22 was due to the rare Gold Star Bonus he received in December 2008, despite Microsoft's announcement at the beginning of 2008 that it would not be giving pay raises or bonuses. Upon reviewing his pay stub from December 31, 2010, Mr. Morris acknowledged that his gross pay for that year was $170,450.89 and that he had also received a Stock Spread Award of $22,000.

On cross-examination, Mr. Morris testified that his final pay stub from 2008 reflected all of the bonuses he had received that year. He further testified that he did not represent to Trustee at the § 341 creditor's meeting that his income was decreasing.

Trustee testified that Debtors' counsel had sent his counsel an email on October 5, 2009, just before the PCM was filed, estimating Debtors' gross income for 2009 at $144,324, or roughly $12,000/month. However, the actual tax return reflected income at closer to $15,000/month. Trustee further testified that the Martinez and Smith decisions, which would have dictated a

-7-

different result in this case, had been issued on October 5, 2009, but he had already entered into the PCM with Debtors on September 28, 2009. Trustee believed those cases provided a basis for him to request modification of Debtors' plan.

On cross-examination, Trustee admitted that he had received all six months of Mr. Morris's pay stubs before he settled with Debtors. He further admitted that Mr. Morris never stated that his income was reduced, but he did state his income was $10,500/month, which was a reduction; the Gold Star Bonus had skewed his income. On re-direct, Trustee testified that Mr. Morris's gross pay for 2008 was $159,265, and his gross pay for 2010 was $170,000, for a positive difference of about $11,000. Upon looking at Mr. Morris's year-end pay stub for 2010, Trustee testified that several different regular bonuses appeared. Trustee admitted the same regular bonuses appeared on Mr. Morris's year-end pay stub for 2008 and that he had possession of that stub before entering into the PCM.

The bankruptcy court issued its oral ruling on Trustee's motion on March 15, 2011. It determined that res judicata did not apply to Trustee's motion. However, it determined law of the case applied to the Confirmation Order with respect to changes in Debtors' expenses despite the change in the law. The court further found that Mr. Morris had not made any misrepresentations about his income, but found that his income was confusing, particularly when considering his bonuses. The court noted that Mr. Morris received the following annual year-end bonuses: (1) Services Incentive Payout; (2) Services Incentive Advance; (3) Award Bonus; and (4) Review Bonus (collectively the "Review

-8-

Bonuses"). Mr. Morris's monthly compensation, without bonuses, was about $10,000, which the court believed should provide the basis for Debtors' plan payments.

The bankruptcy court then proceeded to grant Trustee's motion in part by modifying the plan as follows. Debtors were to pay over to Trustee the "net" difference between the total amount of bonuses Mr. Morris received in 2008, including the Review Bonuses and any Gold Star Bonus, from the total bonus amount he received in 2011. In other words, Debtors were to take the net amount of bonuses Mr. Morris received in 2008, compare that with the net amount of bonuses he received in 2011, and pay over to Trustee the difference between those two figures. The court's ruling was not retroactive; Debtors were to turn over the net bonus funds starting with 2011 and for each year for the remainder of the plan.

The bankruptcy court ordered the parties to agree on a proposed order, which they were unable to do. Trustee lodged his proposed order on April 12, 2011. On April 16, 2011, Debtors filed and served an objection to Trustee's order. Debtors argued, inter alia, that Trustee's order erroneously included Mr. Morris's stock awards in addition to his bonuses; neither Trustee nor the court had ever made any mention of turning over stock awards. Debtors also disputed Trustee's inclusion of changes in Mr. Morris's annual income. Attached to Debtors' objection was their proposed order and documents reflecting the bonuses paid to Mr. Morris in 2008. In their proposed order, Debtors calculated all of the bonuses for 2008 to reach a "benchmark" figure of $19,651.81. Therefore, beginning in January 2012 (when the

-9-

bonuses for 2011 would be known) and continuing annually through 2014, Debtors were to pay over to Trustee net annual bonus amounts exceeding $19,651.81, if any. In other words, Debtors were allowed to keep $19,651.81 in bonus money each year. Debtors were to provide Trustee with all year-end pay stubs for purposes of calculating the annual bonus payments. Trustee did not object to Debtors' proposed order.

Two weeks later on May 2, 2011, the bankruptcy court entered the Modification Order, which adopted the majority of Debtors' proposed order. Consistent with the court's oral ruling, res judicata did not apply to Trustee's motion to modify under § 1329(a), but law of the case applied to bar consideration of changes in the law regarding Debtors' reduced expenses. The Modification Order omitted Trustee's proposed provision regarding increases in Mr. Morris's income and stock awards, but included Debtors' proposed benchmark bonus figure of $19,651.81 and scheme for how annual bonus payments would be calculated. Trustee timely appealed the Modification Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(L) and 1334. A chapter 13 plan confirmation order, whether or not a modification, is a final order. <u>Profit v. Savage (In re Profit)</u>, 283 B.R. 567, 572 (9th Cir. BAP 2002). Therefore, we have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err by applying "law of the case" to deny consideration of changes in the law regarding Debtors' reduced expenses?

2. Did the bankruptcy court abuse its discretion in denying in part and granting in part Trustee's motion to modify the plan?

## IV. STANDARDS OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law de novo. Hoopai v. Countrywide Home Loans, Inc. (In re Hoopai), 369 B.R. 506, 509 (9th Cir. BAP 2007).

Because modification under § 1329(a) is discretionary, we review the bankruptcy court's decision to deny modification of a plan for an abuse of discretion. Powers v. Savage (In re Powers), 202 B.R. 618, 620 (9th Cir. BAP 1996)(citing In re Witkowski, 16 F.3d 739, 746 (7th Cir. 1994)). To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc).

## V. DISCUSSION

**A. Modification under § 1329(a).**

Under § 1329(a), a trustee may move to modify a plan any time after confirmation but before completion of payments to increase the amount of payments on claims. See § 1329(a)(1). As the moving party, Trustee bore the burden of proof to show facts supporting modification of the plan. Max Recovery, Inc. v. Than (In re Than), 215 B.R. 430, 434 (9th Cir. BAP 1997).

-11-

Courts are divided on whether the party seeking to modify a plan must prove that a change in debtor's circumstances be "substantial and unanticipated" before the confirmed plan may be modified under § 1329(a). The Ninth Circuit has not directly ruled on this issue.[6] However, the Panel in In re Powers, following the Seventh Circuit in In re Witkowski, held that the plain language of § 1329(a) does not support a change in circumstances as a prerequisite to modification. 202 B.R. at 622 (citing In re Witkowski, 16 F.3d at 746). As long as the request to modify satisfies the requirements of § 1329, the modification should be approved, even in the absence of a change in debtor's ability to pay. Id.; McDonald v. Burgie (In re Burgie), 239 B.R. 406, 409 (9th Cir. BAP 1999); In re Hall, 442 B.R. 754, 759 (Bankr. D. Idaho 2010). The Powers Panel did note, however, that the court may consider a change in debtor's circumstances in exercising its discretion. Id. at 623.

The bankruptcy court did not articulate whether it applied a "substantial and unanticipated" change standard to Trustee's motion to modify the plan, or something else. Although the parties disputed before the bankruptcy court whether such a standard should apply, in light of our disposition of this appeal, we need not reach this issue.

---

[6] In dicta in Anderson v. Satterlee (In re Anderson), 21 F.3d 355 (9th Cir. 1994), the Ninth Circuit articulated that the trustee can request a modification under § 1329(a), but bears "the burden of showing a substantial change in debtor's ability to pay since the plan was confirmed and that the prospect of that change had not already been taken into account at the time of confirmation." Id. at 358.

-12-

**B.    The bankruptcy court erred by applying law of the case doctrine to preclude consideration of changes in the law regarding Debtors' reduced expenses.**

Res judicata does not act as a bar to modify a plan under § 1329(a).  In re Powers, 202 B.R. at 622 ("Modification pursuant to  § 1329 provides a mechanism to change the binding effect of § 1327.");[7] In re Than, 215 B.R. at 435 (same).

Unlike res judicata, "law of the case" is an amorphous concept.  Law of the case doctrine states that "when a court decides upon a rule of law, that decision should govern the same issues in subsequent stages in the same case."  Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 281 (9th Cir. 1996)(quoting Herrington v. Cnty. of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993)).  Law of the case doctrine is discretionary, not mandatory.  Merritt v. Mackey, 932 F.2d 1317, 1320 (9th Cir. 1991).  Nevertheless, that discretion is limited. Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993).  The court's prior decision should be followed unless: the decision is clearly erroneous and its enforcement would work a manifest injustice, intervening controlling authority makes reconsideration appropriate, or substantially different evidence was adduced at a subsequent trial.  In re Rainbow Magazine, Inc., 77 F.3d at 281.

In its oral ruling, the bankruptcy court determined that law of the case should apply to not revisit the Confirmation Order with regard to Debtors' reduced expenses:

[7] Section 1327 provides, in relevant part, that the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.  § 1327(a).  We observe that the word "trustee" does not appear in this section of the Code.

-13-

> The court is compelled by applying the law of the case not to go and revisit its decision to basically confirm the modified plan as it was originally decided. The court, given that this is ultimately a rule of judicial efficiency, as well as justice, that could open the floodgates to revisiting all the cases that were decided before the law has been clarified . . . .
>
> . . .
>
> So the court is not going to modify this plan because of the change in the law relating to deductions of certain expenses that weren't actual because it finds that that is both just as well as it's necessary for the interests of efficiency and finality.

Hr'g Tr. (Mar. 15, 2011) 6:2-9, 7:10-14.

Trustee contends the bankruptcy court erred in applying law of the case as a substitute for res judicata to deny his motion and not consider Debtors' increased income and reduced expenses as a basis for modification. Trustee contends the court's reliance on law of the case constitutes error in four respects: (1) it applied the doctrine sua sponte; (2) intervening controlling authority - i.e., <u>Martinez</u> - made reconsideration appropriate; (3) the issues were never decided in the PCM; and (4) it negates what § 1329 expressly allows - reviewing a debtor's circumstances for purposes of modifying a plan.

Contrary to Trustee's first argument, the bankruptcy court was free to raise the doctrine of law of the case sua sponte. <u>See</u> <u>United States v. Wallace</u>, 573 F.3d 82, 90 n.6 (1st Cir. 2009); <u>Bolinger v. Oregon</u>, 172 Fed. Appx. 770, at *1 (9th Cir. Mar. 26, 2006)("Because the court itself has an interest in preventing repetitive litigation, we raise the law of the case argument sua sponte even though it has not been previously argued by the parties.").

In response to Trustee's argument that the bankruptcy court

-14-

erred by not considering intervening controlling authority, Debtors argue that Trustee failed to demonstrate the occurrence of intervening controlling authority after Debtors' plan was confirmed: the parties executed the PCM on September 28, 2009; Martinez and Smith were decided on October 5, 2009; the PCM was filed with the bankruptcy court on October 14, 2009; and the court entered the Confirmation Order on November 25, 2009. It is undisputed that Debtors are no longer paying for certain expenses listed in their B22 - a stripped lien on their home and two surrendered vehicles - which equates to another $1,669.75/month available for unsecured creditors.

In Martinez, the Panel held that an above median chapter 13 debtor may not deduct from the B22 payments for stripped off wholly unsecured liens. 418 B.R. at 353. In conjunction with Martinez, the Panel issued Smith, which held that above median chapter 13 debtors may not deduct from the B22 payments for collateral that has been surrendered. 418 B.R. at 368.

Although Martinez and Smith involved plan confirmations under § 1325, in Ransom, which Trustee cited in his supplemental brief, the Supreme Court held in dicta that an unsecured creditor may move to modify a debtor's chapter 13 plan to increase plan payments when the debtor is no longer making payments on a claimed B22 expense. 131 S.Ct. at 729. This, of course, would also include a chapter 13 trustee as the moving party. Although the dictum in Ransom is not binding on the Panel, we treat it with great deference. United States v. Baird, 85 F.3d 450, 453 (9th Cir. 1996). Ransom essentially extended the holdings of Martinez and Smith to apply in cases involving plan modification under

-15-

§ 1329. Ransom was decided on January 11, 2011, which was prior to the evidentiary hearing on Trustee's motion on March 7 and the Modification Order of March 15. Therefore regardless of whether Martinez and Smith were decided prior to or after the PCM and Confirmation Order, Ransom had been decided while Trustee's modification motion, filed on November 8, 2010, was still pending and had yet to be heard, and that is the relevant date for purposes here. We also could not locate any decision, published or unpublished, where a court applied "law of the case" in the context of a plan modification under § 1329. The cases cited by the bankruptcy court support only use of the doctrine generally.

Accordingly, we conclude that the bankruptcy court erred by applying law of the case to not consider the intervening law of Ransom, Martinez, and Smith in its decision to deny Trustee's motion to modify the plan based on Debtors' reduced expenses. We note, however, that once the bankruptcy court applies the above authority upon remand, whether it chooses to include the reduced expenses in Debtors' modified plan is purely within its discretion.[8]

**C.    The bankruptcy court did not make sufficient findings under § 1329(b).**

A modified plan is essentially a new plan. In re Profit, 283 B.R. at 574. Section 1329(b)(1) provides that the modified plan under § 1329(a) must meet some of the same criteria for the

---

[8] We reject Trustee's argument that the bankruptcy court erred by applying law of the case to Debtors' increase in income. Nowhere in the court's oral ruling or in the Modification Order did the court express that it was applying the doctrine with respect to income increases.

-16-

originally filed plan, including §§ 1322(a), 1322(b), 1323(c),[9] and 1325(a).

Trustee's motion to modify was a contested matter under Rule 9014. As such, the bankruptcy court was required under FRCP 52(a) to find the facts specifically and state its conclusions of law separately. In the absence of complete findings, we may vacate a judgment and remand the case to the bankruptcy court to make the required findings. See United States v. Ameline, 409 F.3d 1073, 1082 (9th Cir. 2005). We note that a bankruptcy court's failure to make factual findings as required by FRCP 52(a) does not require reversal and remand unless a full understanding of the issues under review is not possible without aid of the findings. See Simeonoff v. Hiner, 249 F.3d 883, 891 (9th Cir. 2001).

Here, it is not clear without further findings from the bankruptcy court whether the plan as modified met the requirements of § 1329(b)(1). We are particularly concerned about the lack of findings for the bankruptcy court's basis to include only the "net" bonuses payable to Trustee as opposed to the full amount of the bonuses, which were never captured in Debtors' original plan payments. The Modification Order allows Debtors to keep at least $19,651.80 per year of the bonuses. This result constitutes a windfall to Debtors and is inconsistent with §§ 1322(a)(1) and 1325(a)(3).[10] Income substitutes, such as bonuses, not captured in

---

[9] Section 1323(c) does not apply here because no secured creditor was involved with modification of Debtors' plan.

[10] Section 1322(a)(1) states that the plan shall provide for
(continued...)

-17-

a debtor's plan payments may be included in a modified plan. In re Hall, 442 B.R. at 761-63 (citing In re Burgie, 239 B.R. at 411) (plan modified on trustee's motion to include debtor's lump-sum disability payment). We are also concerned about the court's silence regarding the $22,000 Stock Spread Award. However, it is not entirely clear on the record whether Trustee ever sufficiently raised this issue before the bankruptcy court. He did not raise it in his supplemental brief, but the issue was discussed briefly at the evidentiary hearing on March 7, 2011.

## VI. CONCLUSION

Accordingly, we VACATE the Modification Order and REMAND with instructions that the bankruptcy court consider the intervening authority of Ransom, Martinez, and Smith with respect to Debtors'

//

//

//

//

---

[10](...continued) the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as necessary for the execution of the plan.

Section 1325(a)(3) provides, in relevant part, that the court shall confirm a plan if the plan has been proposed in good faith. See Sunahara v. Burchard (In re Sunahara), 326 B.R. 768, 781-82 (9th Cir. BAP 2005)(a good faith analysis under § 1325(a)(3) "necessarily requires an assessment of a debtor's overall financial condition including, without limitation, the debtor's current disposable income, the likelihood that the debtor's disposable income will significantly increase due to increased income or decreased expenses over the remaining term of the original plan, the proximity of time between confirmation of the original plan and the filing of the modification motion, and the risk of default over the remaining term of the plan versus the certainty of immediate payment to creditors.").

reduced expenses in the modified plan, and that it make sufficient findings that the modified plan complies with § 1329(b)(1).[11]

---

[11] Because we are vacating the Modification Order, we need not address Trustee's argument that he was denied an opportunity to refute Debtors' benchmark bonus amount of $19,651.80 set forth in their proposed order and adopted by the bankruptcy court. We note, however, that Trustee had two weeks to object to Debtors' proposed order before the bankruptcy court entered the Modification Order on May 2, 2011, and failed to do so.

-19-